U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    APR 12 2013
Page 2

LORETTA G. WHYTE
CLERK

AO 241
(Rev. 10/07)

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF

HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | Eastern District of Louisiana |
|---|---|

| Name (under which you were convicted): Larry Moses | Docket or Case No.: |
|---|---|

**13 - 821**

| Place of Confinement: Louisiana State Penitentiary | Prisoner No.: 339562 |
|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| LARRY MOSES V. | BURL N. CAIN, WARDEN |

**SECT. 1 MAG. 5**

| The Attorney General of the State of Louisiana: James D. Caldwell |
|---|

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Criminal District Court
    Honorable Arthur Morrell, Clerk
    115 Criminal Court Building
    2700 Tulane Avenue
    New Orleans, La. 70119

    (b) Criminal docket or case number (if you know): Docket No. 371-524.

2.  (a) Date of the judgment of conviction (if you know): October 31, 1995.

    (b) Date of sentencing: November 20, 1995.

3.  Length of sentence: Two life sentences.

4.  In this case, were you convicted on more than one count or of more than one crime?   [X] Yes [ ] No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    1.  First degree murder; and
    2.  First degree murder.

6.  (a) What was your plea? (Check one)

    [X] (1) Not guilty      [ ] (3) Nolo contendere (no contest)

    [ ] (2) Guilty      [ ] (4) Insanity plea

TENDERED FOR FILING

MAR 2 0 2013

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

Fee 5
✓ Process
x Dktd
__ CtRmDep
__ Doc. No.

AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

X   Jury   ☐   Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐   Yes   X   No

8.   Did you appeal from the judgment of conviction?

X   Yes   ☐   No

9.   If you did appeal, answer the following:

(a) Name of court: Fourth Circuit Court of Appeal.
(b) Docket or case number (if you know): No. 96-KA-0641.
(c) Result: Affirmed.
(d) Date of result (if you know): October 1, 1997.
(e) Citation to the case (if you know): *State v. Moses*, 96-0641 (La. App. 4 Cir. 10/1/97), 701 So. 2d 270.
(f) Grounds raised:

1.   Whether the State failed to prove beyond a reasonable doubt, as to each count, that defendant had the specific intent to kill or to great bodily harm to more than one person; further, it violated the prohibition against double jeopardy to charge the defendant with two killings while reciprocally alleging the aggravated circumstance of "specific intent to kill or to great bodily harm to more than one person" in each count.

2.   The State failed to prove defendant's identity as the perpetrator beyond a reasonable doubt.

3.   The trial court erred in allowing evidence of and giving a jury instruction on "flight."

(g) Did you seek further review by a higher state court?   X   Yes   ☐   No

If yes, answer the following:

(1) Name of court: Louisiana Supreme Court.

(2) Docket or case number (if you know): 1997-3016.

(3) Result: Denied.

(4) Date of result (if you know): May 8, 1997.

AO 241
(Rev. 10/07)

(5) Citation to the case (if you know): *State v. Moses*, 1997-3016 (La. 5/8/97), 718 So.2d 427

(6) Grounds raised:

a. Whether the State failed to prove beyond a reasonable doubt, as to each count, that defendant had the specific intent to kill or to great bodily harm to more than one person, further, it violated the prohibition against double jeopardy to charge the defendant with two killings while reciprocally alleging the aggravated circumstance of "specific intent to kill or to great bodily harm to more than one person" in each count.

b. The State failed to prove defendant's identity as the perpetrator beyond a reasonable doubt.

c. The trial court erred in allowing evidence of and giving a jury instruction on "flight."

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☐   Yes   X   No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?   X   Yes   ☐   No

11.    If your answer to Question 10 was "Yes," give the following information:

(1) Name of court: Criminal District Court.

(2) Docket or case number (if you know): No. 371-524.

(3) Date of filing (if you know): January 10, 2000.

(4) Nature of proceeding: Application for Post-Conviction Relief.

(5) Grounds raised: Ineffective assistance of counsel.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐   Yes   X   No

(7) Result: Denied.

(8) Date of result (if you know): July 26, 2002.

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Criminal District Court.

(2) Docket or case number (if you know): No. 371-524.

(3) Date of filing (if you know): March 22, 2002.

(4) Nature of proceeding: Supplemental Application for Post-Conviction Relief.

(5) Grounds raised: Prosecution's suppression of Brady evidence.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐     Yes     X     No

(7) Result: Denied.

(8) Date of result (if you know): July 26, 2002.

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of proceeding:

(5) Grounds raised:

AO 241
(Rev. 10/07)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes  ☐  No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

(1) First petition:  X  Yes  ☐  No

(2) Second petition:  X  Yes  ☐  No

(3) Third petition:  ☐  Yes  ☐  No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:



12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attached additional pages if you have more than four grounds. State the facts supporting each ground.

    CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE - SIX : Please see attached Memorandum in Support of Writ of Habeas Corpus.


(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Please see attached Memorandum in Support of Writ of Habeas Corpus.




(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241
(Rev. 10/07)

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐    Yes    ☐    No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

     X    Yes    ☐    No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Application for Post-Conviction Relief.

Name and location of the court where the motion or petition was filed:

     Criminal District Court
     Honorable Arthur Morrell, Clerk.
     115 Criminal Court Building
     2700 Tulane Avenue
     New Orleans, La. 70119

Docket or case number (if you know): No. 371-524.

Date of the court's decision: July 26, 2002.

Result (attach a copy of the court's opinion or order, if available): Denied.

(3) Did you receive a hearing on your motion or petition?    ☐    Yes    X    No

(4) Did you appeal from the denial of your motion or petition?    X    Yes    ☐    No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    X    Yes    ☐    No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Louisiana Fourth Circuit Court of Appeal.

Docket or case number (if you know): 2005-K-0155

Date of the court's decision: March 1, 2005.

Result (attach a copy of the court's opinion or order, if available): Denied.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 10/07)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐    Yes    ☐    No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐    Yes    ☐    No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?    ☐    Yes    ☐    No

(4) Did you appeal from the denial of your motion or petition?    ☐    Yes    ☐    No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐    Yes    ☐    No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:
(8) Name and location of the court where the motion or petition was filed:

AO 241
(Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☐ No

(4) Did you appeal from the denial of your motion or petition?   ☐ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:   ☐ Yes   ☐ No

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies**: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground One:

**GROUND THREE**:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

AO 241
(Rev. 10/07)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐   Yes   ☐   No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes   ☐   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?   ☐   Yes   ☐   No

(4) Did you appeal from the denial of your motion or petition?   ☐   Yes   ☐   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐   Yes   ☐   No

(6) If your answer to Question (d)(4) is "Yes," state:   ☐   Yes   ☐   No

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 241                                                                                                    Page 11
(Rev. 10/07)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground One:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐     Yes     ☐     No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐     Yes     ☐     No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 10/07)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:  ☐ Yes  ☐ No

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground One:

13.   Please answer these additional questions about the petition you are filing:

   (a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court

         having jurisdiction?   X   Yes   ☐   No

         If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

         presenting them:

   (b)   Is there any ground in this petition that has not been presented in some state or federal court? If so, ground

         or grounds have not been presented, and state your reasons for not presenting them.

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

      that you challenge in this petition?   ☐   Yes   X   No

      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

      raised , the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

      of  any court opinion or order, if available.

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

      the judgment you are challenging?   ☐   Yes   X   No

      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised

AO 241
(Rev. 10/07)

Page 14

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the

        judgment you are challenging:

        (a) At preliminary hearing:

        (b) At arraignment and plea:

        (c) At trial:

        (d) At sentencing:

        (e) On appeal: Attorney Sherry Watters

        (f) In any post-conviction proceeding: Attorney C. Gary Wainwright

        (g) On appeal from any ruling against you in a post-conviction proceeding: Attorney C. Gary Wainwright.


17.     Do not have any future sentence to serve after you complete the sentence for the judgment that you are

        challenging?               ☐   Yes      X   No

        (a) If so, give name and location of court that imposed the other sentence you will serve in the future:


        (b) Give the date the other sentence was imposed:

        (c) Give the length of the other sentence:

        (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

        future?                    ☐   Yes      ☐   No

AO 241
(Rev. 10/07)

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year of limitation as contained in 28 U.S.C. §2244(d) does not bar your petition. *

Although Mr. Moses' Petition for Federal Writ of Habeas Corpus is untimely, he submits this petition in light of United States Supreme Court decision in *Martinez v. Ryan*, --- U.S. ---, 132 S.Ct. 1309, L.Ed.2d 272 (2012).

In *Martinez* the United States Supreme Court modified the unqualified statement in *Coleman v. Thompson*, 501 U.S. 722, 753-754, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "that an attorney's ignorance or inadvertence in a post conviction proceeding does not qualify as cause to excuse a procedural default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. Likewise, although as a general matter, a petitioner is bound by post-conviction attorney's procedural defaults, the Court explained in *Maples v. Thomas*, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), that "[a] markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative.

In the instant matter, on June 26, 1998, Mr. Moses and his family retained Attorney C. Gary Wainwright to prepare Mr. Moses' Application for Post Conviction Relief. Exhibit "2." Mr. Wainwright did not complete Mr. Moses' petition until January 5, 2000, approximately one year and 242 days after the finality of Mr. Moses' direct appeal. Exhibit "3."

------

*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. §2244(d) provides in part that:

    (1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 10/07)

Page 16

(2)     The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: Reverse his conviction and sentence.

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this

Petition for Writ of Habeas Corpus was placed in the prison mailing system on March 19, 2013.

Executed (signed) on March 19, 2013.

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this

petition.

AO 241
(Rev. 10/07)

## Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are seeking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite case law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $_____, you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and two copies to the Clerk of the United States District Court at this address:

**CLERK'S OFFICE, U.S. DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**500 POYDRAS STREET, ROOM C-151**
**NEW ORLEANS, LA 70130**

9. **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

10. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA


## CIVIL ACTION


**LARRY MOSES, Petitioner**

**VERSUS**

**BURL CAIN, Warden**
**Louisiana State Penitentiary, Respondent**


## PETITION FOR WRIT OF HABEAS CORPUS RELIEF
## WITH MEMORANDUM IN SUPPORT


Submitted and Prepared by;

Mr. Larry Moses
DOC #339562, Camp C Jaguar
Louisiana State Penitentiary
Angola, La. 70712

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY MOSES,                                    DISTRICT COURT
        Petitioner

VERSUS                                          CIVIL ACTION NO_____

WARDEN, BURL CAIN                               DATE FILED_____
        Respondent                      Dy. Clerk of Court

## MEMORANDUM IN SUPPORT
## OF PETITION FOR WRIT OF HABEAS CORPUS

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, comes Mr. Larry Moses, who with respect submits this Memorandum in Support of Petition for Writ of Habeas Corpus.

### JURISDICTION

This Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. § 2254.

### STATEMENT OF THE CASE

In the early morning hours of January 4, 1994, Alma Causey and Daniel Ratcliff were murdered on a street corner in the City of New Orleans. In June of 1994, Relator was arrested, charged and indicted by an Orleans Parish grand jury for two counts of first degree murder. After trial by jury on October 31, 1995, Relator was convicted as charged and thereafter sentenced to serve life imprisonment on both counts to run concurrent with one another. Attorney Sherry Watters filed Mr. Moses' direct appeal to the Fourth Circuit Court of Appeal. **Exhibit "1."** The Fourth Circuit Court of Appeal affirmed Mr. Moses' convictions and sentences. *State v. Moses,* 96-0641 (La.App. 4 Cir. 10/1/97), 701 So.2d 270. Thereafter, Supreme Court of Louisiana denied Mr. Moses' Writ of Certiorari. *State v. Moses,* 1997-3016 (La. 5/8/97), 718 So.2d 427.

At this juncture, on June 26, 1998, Mr. Moses and his family retained Attorney C. Gary Wainwright to prepare Mr. Moses' Application for Post Conviction Relief. **Exhibit "2."** Mr.

Wainwright did not complete Mr. Moses' petition until January 5, 2000, approximately one year and 242 days after the finality of Mr. Moses' direct appeal. **Exhibit "3."** Although Mr. Moses' state petition was timely filed, the time limitation of 28 U.S.C. § 2244(d)(1) to file a Federal Writ of Habeas Corpus had already elapsed by 152 days. **Exhibit "4."** The trial court denied relief on July 26, 2002.[1]

Shortly thereafter, Mr. Moses filed a second Application for Post-Conviction Relief on or about November 1, 2004, which also was denied. **Exhibit "5."** Mr. Moses then filed a Supervisory Writ to the Fourth Circuit Court of Appeal which was also denied. **Exhibit "6."** On March 28, 2005, Mr. Moses filed a Supervisory Writ in the Louisiana Supreme Court. **Exhibit "7."** On February 3, 2006, the Louisiana Supreme Court denied relief. **Exhibit "8."**

Due to the inadequate assistance of Mr. Moses' counsel at Moses' initial collateral proceedings, no further action was taken to pursue a Federal Writ of Habeas Corpus.

### STATEMENT OF THE FACTS

Officers Willie Bickham and Nathan McGee testified that they were called to the corner of Felicity and Humanity Streets in New Orleans on January 4, 1994, at 1:00 a.m. And found a black female, later identified as Alva Causey, on her side with a shot to her head and a black male beside her, face up with a shot to his head. Emergency medical services were called, along with the crime lab officers and homicide officers. Of the nearly twenty people on the scene, there were no witnesses. (Tr. 17-30). Officer Wayne Rumore of homicide division took over the investigation. When he arrived at the scene, Causey had been moved and Ratcliff had been taken to the hospital. Two .25 caliber casings and one live round were found on the scene. Along with Ratcliff's shirt and cap, the casings were recovered by the crime lab. The crime lab officer also made a diagram of the scene. (Tr. 87-8). Although an alleged witness was interviewed at 2344 Feliciana Street, there were no warrants issued for Defendant until June 6, 1994.

---

[1]Mr. Moses pursued relief through the Louisiana Supreme Court. **Exhibit "9."**

Officer Rumore testified that on June 6, 1994, he got a call from Frederick Stamps, met with him along with officer Ronquillo, and brought him into the office. He conducted a photo line-up wherein Stamps identified the defendant as the perpetrator. Officer Ronquillo testified about the line-up. (Tr. 52-7). The officer knew of a fight between Stamps and the defendant that had occurred in May of 1994. Stamps had known Larry Moses for years. (Tr. 31-51). The defendant was arrested June 25, 1994, in Marietta, Georgia. (Tr. 73-4).

Dr. Monroe Samuels, an expert in forensic pathology, testified that Dr. Newman from his office conducted autopsies on Alva Causey and Daniel Ratcliff. The autopsy of Causey showed that she was three and one half months pregnant and had cocaine in her system at the time of her death. She died of a single gun shot above her left ear in a horizontal path. No drug testing was done in the autopsy of Ratcliff, as emergency intervention that was attempted would have voided any results. He died of a single gun shot above his right ear in a horizontal path. There was no stippling or powder burns in either wound. Both bullets were recovered. (Tr. 3-10).

Officer Byron Winbush, without being qualified as an expert, testified that he examined the two bullets that were recovered in the autopsies and the two casings that were recovered on the scene. He testified that the bullets were similar, but not the same, and could not have been fired from a .22 caliber weapon that the district attorney asked him to examine. He testified that the two cartridges were fired from the same weapon. (Tr. 75-86).

June Hayes testified that she knew Larry Moses, Alva Causey and Daniel Ratcliff all of her life and that they knew each other. She said that she was drinking and talking with Causey and Ratcliff on January 4, 1994, at her great uncle's house at 3244 Feliciana Street. Ratcliff left to get beer for Causey. When he did not return, Causey went to find him. While they were gone, Ms. Hayes went to the bathroom. When she came out, she heard three voices outside through the closed window. Causey and Ratcliff were facing her. But she could not see the face of the third person. She could not describe the

3

third person's hair, face or skin.

The third person was demanding money and ordering them to lay on the ground. Ms. Hayes went to get her uncle, who was sleeping. When she next looked out the window, she heard two shots then saw two bodies in the street. She saw Ratcliff shot first, then Causey. She called police. The voices were not 100% clear. She said that she testified at the grand jury that she believed 70 to 75% that it was Larry Moses' voice. She was not sure. She could not identify the defendant. (Tr. 70).

Ms. Hayes went outside. Ratcliff was still alive, but not talking. She saw Frederick Stamps on the corner, but no one else in the neighborhood. Larry Moses lived across the street but was not outside. Other neighbors came out after the shooting. She testified at trial that she was not identifying Larry Moses as the perpetrator.

Frederick Stamps testified that he was returning from a trip to the store to buy beer when he passed Larry Moses, Alva Causey and Daniel Ratcliff, all of whom he knew. He said he was not intoxicated. Stamps claimed that when he spoke to the threesome, the defendant told him to get away. He did not see a gun. He thought they were arguing. When he got fifteen to twenty feet away, he heard two bangs and he ran. He claimed he saw the defendant walk away and Causey and Ratcliff on the ground. Stamps said he went to his house but no one answered the door so he went to a friend's house. (Tr. 89-131). Stamps did not return to the scene to talk to police, nor did he call police.

It was not until June of 1994, after a fight with the defendant from a line-up and identified him as the person who shot Causey and Ratcliff in January. He said he was not afraid of the defendant and that Moses had not threatened him. Stamps testified that he was shown one photgraph of the defendant before being shown the line-up. (Tr. 120-3). Larry Moses' motion for mistrial, based on the improper phot line-up procedure which had not been disclosed prior to trial, was denied. (Tr. 156-7).

Stamps claimed he saw the defendant with a woman, Gail Jenkins, whom he had dated. In May of 1994, the woman called him to the car at Montegut and Humanity Streets and then he got in an

4

argument and a fight with Larry Moses. He admitted that he was very angry at Moses, but denied that the argument was about the woman.

In the fight, Stamps' arm was broken. He refused emergency medical treatment until the police came. They could not find the defendant at his house. The police took him to Charity Hospital, but he later left against medical advice. He called police and made the identification of the defendant for the January incident. On cross-examination, he admitted that the fight with Moses was over money owed Jenkins for a "trick date." He said that when he went to police in June, it was "personal" and he wanted justice for himself, but he did not care about getting justice for Causey and Ratcliff (Tr. 118-9).

the defense witnesses were called out of turn. Oralee Stevenson, the defendant's aunt, and Mack Moses, the defendant's father, each testified that Larry Moses was at his aunt's house in Bogalusa, Louisiana, on January 4, 1994. they said he went there before the Christmas holidays and stayed through the Saturday following, or approximately January 6 or 7, 1994. (Tr. 135-155).

For the State, Katherine Ratcliff identified pictures of her son. Officer Scott Adams of the Bogalusa Police Department testified that he showed the district attorneys around Bogalusa and assisted them in interviewing Ms. Stevenson. Adams said that Ms. Stevenson was unsure of dates during the interview, but consistently maintained that Larry Moses was at her home several weeks during the holidays.

The defendant objected to the court instructing the jury as to flight. (Tr. 173-4). The jury found the defendant guilty as charged on both counts, but deadlocked in the penalty phase.

## Summary Discussion

Mr. Larry Moses received inadequate assistance of counsel at initial-review collateral proceedings, and the actions of his counsel amounted to abandonment during the post-conviction stages which resulted in Moses' claims being procedurally defaulted for obtaining a Federal Writ of Habeas Corpus.

It should also be noted that Mr. Moses did not learn of the rational of *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309, L.Ed.2d 272 (2012) or *Maples v. Thomas*, 132 S.Ct., 181 L.Ed.2d 807 (2012) until recently shortly after February 5, 2013, when these case laws were updated in the prison law library's computer. *See Egerton v. Cockrell*, 334 F.3d 433 (C.A.5 2003)(an inadequate prison law library may constitute a state created impediment that would toll the AEDPA's one-year limitations period).

In *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309, L.Ed.2d 272 (2012), the United States Supreme Court modified the unqualified statement in *Coleman v. Thompson*, 501 U.S. 722, 753-754, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "that an attorney's ignorance or inadvertence in a post conviction proceeding does not qualify as cause to excuse a procedural default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. Likewise, although as a general matter, a petitioner is bound by post-conviction attorney's procedural defaults, the Court explained in *Maples v. Thomas*, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), that "[a] markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative.

In the instant matter, on June 26, 1998, Mr. Moses and his family retained Attorney C. Gary Wainwright to prepare Mr. Moses' Application for Post Conviction Relief. **Exhibit "2."** Mr. Wainwright did not complete Mr. Moses' petition until January 5, 2000, approximately one year and 242 days after the finality of Mr. Moses' direct appeal. **Exhibit "3."** Although Mr. Moses' state petition was timely filed, the time limitation of 28 U.S.C. § 2244(d)(1) to file a Federal Writ of Habeas Corpus had already elapsed by 152 days. Prior to the federal limitation period of **28 U.S.C. § 2244(d)(1)** had expired, Mr. Moses consistently wrote letters to Mr. Wainwright concerning the time limitations. **Exhibits "10-12."** Mr. Wainwright never responded. Mr. Moses then had his family to continually

phone Mr. Wainwright and express Mr. Moses' concerns. Mr. Wainwright advised Mr. Moses' family that the post conviction application had been filed; however, Mr. Wainwright failed to file the application until January 10, 2000, eighteen (18) months after the Louisiana Supreme Court denied Mr. Moses' Writ of Certiorari. Mr. Moses then filed a complaint with the Office of the Disciplinary Counsel advising them of Mr. Wainwright's unprofessional conduct. **Exhibit "2."**

## ISSUES AND QUESTIONS OF LAW PRESENTED

1. Whether the State failed to prove beyond a reasonable doubt, as to each count, that defendant had the specific intent to kill or to great bodily harm to more than one person; further, it violated the prohibition against double jeopardy to charge the defendant with two killings while reciprocally alleging the aggravated circumstance of "specific intent to kill or to great bodily harm to more than one person" in each count.

2. The State failed to prove defendant's identity as the perpetrator beyond a reasonable doubt.

3. The trial court erred in allowing evidence of and giving a jury instruction on "flight."

4. Relator was denied Due Process when evidence favorable to the defense which affected the credibility and reliability of the State's primary witness was suppressed by the State.

5. Relator received ineffective assistance of trial counsel.

6. Relator received ineffective assistance of appellate counsel.

**ISSUE 1: Insufficient evidence and double jeopardy.**

The State failed to prove that Larry Moses had the specific intent to kill or do great bodily harm to more than one person, as required by LSA-R.S. 14:30(3). In *State v. Andrews*, 452 So.2d 687 (La. 1984) and *State v. Stewart*, 458 So.2d 1289 (La. 1984) the Louisiana Supreme Court reversed first degree murder convictions based on this section of the statute under circumstances where the State had failed to prove that the accused specifically intended by the same act to kill or do great bodily harm to more than one person. The court held that LSA-R.S. 14:30(3) requires that the offender must actively desire that the death or great bodily harm of more than one person result from the act or acts by which the committed to the homicide or by an act inseparable therefrom. *Stewart, supra,* at 1291 (Emphasis

7

theirs).

In *Stewart,* the defendant had got in an argument in a house with several people. Some went outside to escape the defendant. Inside the house, the defendant killed one person. Then he went outside and shot another in the chest, wounding her. The Court reversed the first degree murder conviction and entered a verdict of second degree murder after finding that the shooting inside the house did not put more than one person in danger of death or great bodily harm and was not inseparable from the shooting outside the house. *See also State v. Gerrel,* 499 So.2d 383 (La. 4 Cir. 1986) and *State v. Willis,* 360 So.2d 813 (La. 1978).

Larry Moses' alleged action of shooting Causey and Ratcliff each individually does not indicate an active desire to kill or inflict great bodily harm on more than one person. Nor was the act of shooting Causey inseparable from the later act of shooting Ratcliff, or vice versa. The two alleged acts by Larry Moses are separable and distinct. Neither created risk of harm to more than one person or proved a desire to harm more than one person.

Further, in *State v. Borbenave,* 660 So.2d 1207, 93-1682, 8/23/95 (La. 4 Cir. 1995), the Court discussed *State v. Tyler,* 342 So.2d 574, 582 (La. 1977) for the principle that the single act that results in the death of one person must also put others in danger or kill another. In *Tyler,* the defendant shot into a crowd and killed one person as the conviction was upheld. In *Borbenave,* where, as here, the defendant allegedly fired separate shots distinctly at two separate people, the attempted first degree murder conviction was reversed and a verdict of attempted second degree murder was entered. Minimally, Larry Moses' conviction for first degree mureder must be reversed and a verdict of secondc degree murder entered under the provisions of LSA-C.Cr.P. Art. 821(E).

Moreover, the prohibition against double jeopardy was violated by reciprocally using the killing of Causey or Ratcliff as the aggravating factor to make the killing of the other a first degree murder. Only two alleged victims are involved here, while it may have been permissible to charge the defendant

8

with the murder of one victim, using the other crime against the other to elevate the charge to a first degree murder, it is not permissible to also charge him with the first degree murder of the other. It is analogous to the double jeopardy cases involving the felony murder rule.

The prohibition against double jeopardy protects an accused not only from a second prosecution for the same offense, but also from multiple punishments for the same criminal conduct. *State v. Banks*, 496 So.2d 1099 (La. 4 Cir. 1986); *State v. Vaughn*, 431 So.2d 763 (La. 1983). Where a murder charge to which the defendant had pled guilty was based on the felony murder provision of the law and founded on armed robbery, a conviction on the armed robbery based on the same offense was double jeopardy. *Colle v. Henderson*, 350 F.Supp. 1010 (U.S.D.Ct., E.D.La. 1972). Likewise, the guilty verdict and sentence for both counts of first degree murder, each using the other as an aggravating circumstance circumstance, violates double jeopardy and the defendant's conviction for one of the charges must be reversed.

The defendants' convictions for attempted armed robbery following their convictions for felony murder arising out of the same incident, in which the attempted robbery was the underlying felony, violated the prohibition against double jeopardy. *State ex rel. Wikberg v. Henderson*, 292 So.2d 505 (La. 1974). The first degree murder charge as to Alma Causey in count one, made a first degree charge due to the killing of Daniel Ratcliff, arose out of the same incident and required the same proof as the first degree murder charge in count two as to Daniel Ratcliff, which was made a first degree charge due to the killing of Alma Causey. The same evidence used to prove count one proved count two. Proof of count one required proof of no additional element that was not needed for count two. Larry Moses' conviction and sentence on one of the counts must be reversed as it violates double jeopardy to convict him of both counts.

ISSUE 2: Insufficiency of evidence regarding a failure to establish the identity of the perpetrator.

The constitutional standard of review for sufficiency of the evidence to support a conviction is

9

whether, viewing the evidence in light most favorable to the prosecution, any rational trier of fact could

have found that the State proved the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Heck*, 560 So.2d 611

(La. 4 Cir. 1990). The State was required to prove beyond a reasonable doubt that Alma Causey and

Daniel Ratcliff were murdered and that the defendant committed the murders. The State failed in its

burden in that it failed to prove the identity of Larry Moses as the perpetrator beyond a reasonable

doubt.

The State had no circumstantial or scientific evidence whatsoever that linked Larry Moses to

this crime. June Hayes, a woman who knew the victims as well as the defendant all of her life, could

not and would not identify defendant or his voice as the perpetrator. (Tr. 63-4, 68-70). There was no

one seen on the street after the incident. There was no evidence of bad blood between the defendant and

Causey or Ratcliff. In January of 1994, Frederick Stamps was not at the scene to talk to police, nor did

he call police. He said he was not afraid of the defendant and that Moses had not threatened him. The

State's case lies entirely on Frederick Stamps' allegations. As these allegations are totally unreliable,

incredible and without any corroboration, they cannot support two first degree murder convictions.

There were no witnesses, no calls and no leads until Frederick Stamps got in a fight with Larry

Moses on May 20, 1994. in the fight, Stamps' arm was broken. Thereafter, Stamps accused Moses of

the January murders because, as he admitted, it was "personal" and he wanted justice for himself, but

he did not care about getting justice for Causey and Ratcliff (Tr. 118-9).

The reviewing court may not disregard its duty to consider whether the evidence is

constitutionally sufficient simply because the record contains evidence that tends to support each fact

necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court is

not permitted to consider just the record as a whole since that is what a rational trier of fact would do

*Mussall, supra.* If rational triers of fact could disagree as to the interpretation of the evidence, the

rational trier's view of all the evidence most favorable to the prosecution must be adopted *Mussall, supra.* The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall, supra.*

Considering the record as a whole, the State failed to satisfactorily prove that Larry Moses killed Alma Causey and Daniel Ratcliff. In any criminal prosecution, the State must sustain the heavy burden of proving every element of the crime charged beyond a reasonable doubt. LSA-R.S. 15:439; *State v. Hollingsworth,* 337 So.2d 461 (La. 1976); *State v. Brady,* 414 So.2d 364 (La. 1982). The State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *Brady, supra,* at 365; *State v. Long,* 408 So.2d 1221 (La. 1982). In a criminal trial, prima facia evidence of identity is not sufficient. There must be proof of identity beyond a reasonable doubt. *State v. Brown,* 504 So.2d 639, 640 (La. 4 Cir. 1987).

While Frederick Stamps knew defendant and there is no problem with his perception or ability to see, his testimony illustrate that there are many problems with his accuracy, credibility and reliability. He was admittedly an extremely biased witness with a blatant grudge against the defendant. He did not come forward with his alleged knowledge about the perpetrator until after he and the defendant had a serious altercation in which he was the loser. He claimed no fear or threats to explain his delay. (Tr. 97-8).

By Frederick Stamps' account and the State's incredulous theory, Larry Moses killed two people across the street from his home and in full vision of Stamps. Then he stayed in New Orleans for four months until he got in a fight with Stamps in May and broke Stamps' arm. Fearing arrest for breaking Stamps' arm, he promptly left town and was arrested in Georgia (something he had not done after allegedly committing two murders). The story as given by Stamps and used by the State makes no sense and lacks all indicia of reliability. It does not support proof beyond a reasonable doubt that Larry Moses was the perpetrator. His convictions must be reversed and a new trial ordered.

**ISSUE 3: Trial court erroneously admitted evidence and gave jury instruction on flight.**

The killing of Ms. Causey and Mr. Ratcliff occurred on January 4, 1994, at Feliciana and Humanity Streets. On May 20, 1994. According to the State's witness, Frederick Stamps, Larry Moses was still in the neighborhood where the incident occurred. Stamps claimed that on that date, four months after the incident, he and Moses were involved in a fight at the corner of Montegut and Humanity Streets, only a few blocks away. Yet, evidence of the defendant's arrest in Marietta, Georgia, on June 25, 1994, was presented, (Tr. 3-4), and, over defense objection, the court instructed the jury on "flight." (Tr. 13-4).

While evidence of flight at the time of arrest may show consciousness of guilt and is relevant and generally admissible, evidence of "flight" four months after the incident has no relevance and is inadmissible. It was clear error for the court to instruct the jury that leaving the state four months after an incident could be used to infer guilty knowledge or consciousness of guilt.

In this case, as in *State v. Bordenave,* 660 So.2d 1207, 93-1682, 8/23/95 (La. 4 Cir. 1995), the defendant knew that Stamps called police relative to the fight over the "trick date" with Gail Jenkins and he was sought on those unrelated charges. That alleged incident occurred in May of 1994 and the defendant was arrested in Georgia in June of 1994. Moses' alleged "flight" was connected to that incident, not the January of 1994 murder charges. Thus, admission of evidence about that incident was not probative. It was error to allow the evidence and the instruction on "flight."

In *State v. Lee,* 381 So.2d 792 (La. 1980), the Court held that evidence of flight six weeks after the incident was inadmissible, as it was not contemporaneous enough to show guilty conscious. A four month gap between the alleged incident and leaving the area is not contemporaneous and is not indicative of the defendant's state of mind. As in *Bordenave, supra,* at 1215, "consciousness of guilt of the crime charged could not reasonably be inferred from his flight and the prejudicial effect outweighed its probative value."

Moreover, the court's instruction that the June "flight" could infer guilty knowledge was highly prejudicial and requires that the conviction be reversed. No "flight" occurred after the alleged January shootings. The admission of the evidence of "flight" in itself was not as prejudicial as the court's objection to the judge's general charge is properly preserved if made immediately after the jury is retired, particularly if that is the first opportunity to object. *State v. Mack*, 403 So.2d 8 (La. 1981). Larry Moses promptly objected to the instruction on "flight." (Tr. 173-4).

The instruction on "flight" was not harmless error as it gave the jury a way to infer guilty knowledge or a state of mind for murders that were not sufficiently proven attenuated to his lleged "flight." The "flight" in June of 1994 was not proven to be related in time, motive or reason to the alleged January 1994 crimes.

> The task of a reviewing court conducting a harmless error analysis is to determine whether the error contributed to the verdict or whether the force of the evidence presumably considered by the jury in accordance with the instructions of the court is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on the that evidence would have been the same in the absence of the error. *Bordenave, supra,* at 1215, *citing State v. Corley*, 93-1934 (La. 3/11/94), 633 So.2d 151, 154 (emphasis added).

The evidence of Moses' arrest in Georgia in June of 1994 alone was harmless until the court made the further error of instructing the jury, over defense objection, that it could be used to infer guilty consciousness.

In this case, Stamps was the only witness who identified the defendant. Stamps' credibility was severely undermined by his failure to report the crime or contact officers for four months until he and the defendant were involved in an unrelated incident of their own over a woman and money in May of 1994. June Hayes refused to identify the defendant, or even affirmatively identify his voice, as that of the shooter. Without the prejudicial instruction on "flight" which allowed the jury to impute a guilty knowledge not sufficiently proven to be related to these charges, the evidence of the correctness of Stamps accusation and identification of defendant was lacking. Moreover, the defendant's alibi

witnesses were strong. Thus, the evidence was not so overwhelming as to establish beyond a reasonable doubt that the verdict would have been the same absent the error. Larry Moses' convictions must be reversed and a new trial ordered.

ISSUE 4: *Brady*.

Mr. Moses contends that the Prosecution suppressed favorable evidence that is material to his defense.

**Standard of Review**

The 5TH, 6TH, and 14TH Amendments of the United States Constitution require the State to disclose evidence that is material and favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194. To establish a *Brady* violation, a defendant must show: 1) the state withheld evidence; 2) the evidence is favorable to the accused, and 3) the evidence is material to the defendant's guilt. *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555. Trial counsel's ineffective assistance is govern by the 6th and 14th Amendment of the United States Constitution.

In the instant matter, the State's case was primarily predicated on the testimony of Frederick Stamps who identified Petitioner as the perpetrator of the murders over a five (5) months after they occurred. Mr. Stamps claimed that he inquired as to what was going on between Petitioner and the victims only moments before they were murdered and that he did not contact police that night "because it was not his business." During the five month period he allegedly got into two different confrontations with Petitioner, the latter allegedly occurred on May 28, 1994. However, unbeknown to Petitioner, only three days before this photographic lineup, on June 3, 1994, Stamps' mother had him taken into protective custody because he was suffering from mental illness, showing violent behavior, and making threats against his family and others. The Order for Protective Custody signed by Orleans Parish Coroner Dr. Frank Mannered, which is attached hereto as **Exhibit "13,"** and made part hereon, is timed 5:05 p.m. of June 3, 1994. It is ironic that for a period over five months Mr. Stamps did not identify

14

Petitioner as the perpetrator of the murders, yet during the period of time when he was suffering from mental illness, showing violent behavior and making threats against his family and others, Mr. Stamps suddenly identified Petitioner as the murderer of the victims in this matter.

Petitioner avers that in light of the Order of Protective Custody, the State is charged with Knowledge of Mr. Stamps' mental condition at the time when he identified Petitioner. The Parish Coroner signed the protective order and to a significant degree he is a part of the prosecutorial team. It is implausible, if not impossible, that the police and the prosecutors in this matter had knowledge of Mr. Stamps' mental condition at the time. In light of the fact that for a period of over five months Mr. Stamps allegedly knew the identity of the murderer, yet failed to come forward with this information, the State had a duty to fully evaluate his credibility as a witness. In so doing, it had a duty to disclose this information relative to Mr. Stamps' background. Had the defense been armed with this pertinent information, it could have easily discredited Mr. Stamps and impeached him as a witness. Therefore, Petitioner was denied Due Process when the State failed to disclose that its primary witness was suffering from mental illness at the time he identified Petitioner as the murderer. The defense in this matter was entitled to this favorable and material evidence, which destroys the credibility and reliability of the State's primary witness. Without this information, Petitioner was deprived of a fair and impartial trial.

Petitioner is entitled to a reversal of his conviction and sentence.

**ISSUE 5: Ineffective Assistance of Counsel.**

Mr. Moses contends that he received ineffective assistance of trial counsel.

**Standard of Review**

To make a successful claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversary process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. Under *Strickland supra*, counsel has a "duty to make reasonable investigations or to make a reasonable decision that make particular investigations unnecessary . . . a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S.Ct. at 2066. However, counsel's acts or omissions must not be "outside the wide range of professionally competent assistance."

When it is apparent that alleged acts of attorney incompetence were in fact conscious strategic or tactical decisions, review of these actions must be "highly deferential." *Kimmelman v. Morrison,* 474 U.S. 815, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). But counsel should not be allowed to shield his failure to investigate simply by raising a claim of "trial strategy and tactics." *Crisp v. Duckworth,* 743 F.2d 580, 584 (7th Cir. 1984). Certain defense strategies or decisions may be "so ill-chosen" as to render counsel's overall representation constitutionally defective. *Washington v. Watkins,* 665 F.2d 1346 (5th Cir. 1981).

In considering a claim of ineffective assistance of counsel, the reviewing court must examine counsel's conduct in light of "all the circumstances" of the case and from the point of view of "counsel's perspective at the time" so as to "eliminate the distorting effects of hindsight." *Strickland,* at 689, 104 S.Ct. At 2065.

In this case, Petitioner asserts that he was denied effective assistance of counsel when counsel failed to thoroughly investigate the background of the primary witness, Frederick Stamps, who could have been easily discredited during the course of trial, and he was denied effective assistance of counsel during trial by counsel's failure to bring out obvious discrepancies between the testimony of

16

Frederick Stamps and June Hayes, the two primary State witnesses who placed Petitioner at the scene of the crime.

This prosecution was predicated on the testimony of two witnesses who gave contradictory testimony regarding the shooting that Mr. Jenkins failed to emphasize before the jury. First of all, Ms. Hayes testified that she saw Mr. Stamps on the corner after the shooting. However, Mr. Stamps testified that after passing between the victims and Mr. Moses and going fifteen to twenty feet away he heard two shots and ran to a friend's house. Therefore, how could Ms. Hayes see him on the corner where the shooting occurred after the shooting when he testified that he was fifteen to twenty feet beyond the victims when he heard two shots and that he immediately ran to a friend's House. Furthermore, Ms. Hayes testified that when the perpetrator confronted her friends his back was toward her; however, Mr. Stamps testified that when he passed between the victims and the perpetrator, the perpetrator was facing Ms. Hayes' home. (Tr. 114, lines 27-29). These clear-cut contradictions were crucial to the testimony of both witnesses, yet Mr. Jenkins failed to emphasis these crucial contradictions during trial or closing argument.

Moreover, Mr. Jenkins failed to thoroughly investigate the background of Mr. Stamps for had he done so, he would have discovered the Order for Protective Custody and set out to completely discredit Mr. Stamps' credibility before the jury. Already, it was strange that Mr. Stamps waited several months before informing police that Mr. Moses was the killer, and only after he had had several months before informing police that Mr. Moses was the killer, and only after he had had some problems with Mr. Moses himself. Therefore, any evidence tending to discredit Mr. Stamps was crucial to Mr. Moses' defense, and defense counsel's failure to seek out this information and use it in cross-examination amounts to constitutional ineffective assistance of counsel.

Clearly, it is more likely than not that but for counsel deficient performance the results of the proceedings would have been different. Mr. Jenkins flat out failed to fulfill his duty as a advocate for

Petitioner. He did not have a thorough understanding of Petitioner's case before trial, and his cross-examination of witnesses and making of argument were inept at best.

This would be a different matter had there not been obvious contradictions between the only two witnesses placing the defendant on the scene of the crime. This would also be a different matter had there been some physical evidence connecting Mr. Moses to the crime. But this is not the case, and with subsequent information about payments being made by a victim's mother to witnesses to place the defendant at the scene of the crime, and subsequent information discrediting and contradicting the primary witness by placing him elsewhere at the time of the shooting, the fact that one witness states she saw the other witness on the scene after the shooting, while that witness states that he ran to a friend's home upon hearing two shots fired is crucial indeed. Moreover, if Ms. Hayes is truthful about the perpetrator facing her home when he passed the scene. Whatever the case, Mr. Moses has been victimized by inconsistent, contradictory trial testimony of crucial State witnesses and is entitled to a reversal of his convictions and sentences.

Trial counsel was also ineffective in failing to object to the trial court's instruction to the jury, particularly, the court's reasonable doubt instruction. The trial court's reasonable doubt instruction violated *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in that prohibited portions of the *Cage* "reasonable doubt" instruction were incorporated within the instructions given by the trial court herein. In view of the holding in *Cage, supra,* and the subsequent decisions of *sullivan v. Louisiana,* 113 S.Ct. 2078 (1993), *Victor v. Nebraska,* 511 U.S. 1, 114 U.S. 1239 (1994), and *Humphrey v. Cain,* 138 F.2d 552 (5th Cir. 1998)(en banc), Mr. Jenkins should have taken every precaution possible in protecting Mr. Moses' jury instruction rights. This he did not do, thsu, further depriving Petitioner of his constitutional right to effective assistance of counsel.

ISSUE 6: Ineffective assistance of appellate counsel.

Mr. Moses contends that he received ineffective assistance of appellate counsel.

18

**Standard of Review**

According to the United States Supreme Court, the standard for evaluating a claim that appellate counsel was ineffective on appeal is that enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Smith v. Robbins*, 528 U.S. 259, 145 L.Ed.2d 756, 120 S.Ct. 746 (2000); *citing Smith v. Murray*, 477 U.S. 527, 535-536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The *Robbin's Court* explained that:

> Respondent must first show that his counsel was objectionably unreasonable, *see, Strickland*, 466 U.S., at 687-691, 104 S.Ct. 2052, in failing to find arguable issues to appeal--that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Respondent] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. [ 528 U.S. 286] *See, Id.*, at 694, 104 S.Ct. 2052 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). (FN14).

*Id. at* U.S. 285-286.

Although Mr. Moses' claims were improperly presented by counsel earlier, he may relitigate, in the interest of justice. Moses' record is replete with his appellate counsel's failure to raise his *Brady* claim properly. No doubt the Court of Appeal, Fourth Circuit rendered its opinion without any constitutional authority whatever. Moreover, post-conviction counsel failed to raise substantial errors made by the appellate court and appellate counsel. In fact, he failed to press that his client's cause should be considered under Louisiana legislation concerning "excusable failure or in the interest of justice."

As the United States Supreme Court articulated in *Kimmelman v. Morrison*, 106 S.Ct. 2574 (1986), emphasized that counsel's shortcomings were resultant of "ignorance as opposed to a strategic decision." So. For readily apparent reasons in this case, neither the state nor the court can profess they made reasonable strategic choices, when it appears on the face of the record that the trial, appellate and post-conviction attorneys made no strategic decisions at all, illustrating their lack of understanding of Louisiana's procedural law. Conceivably, a more reasonable explanation is that the appellate and post-

conviction counsels did not present the available evidence, or their arguments were not decisions related to strategic choices, but rather was a lack of decision resultant of inadequate preparation or plainly not knowing the law. For example, appellate counsel knew or should have known that any new material facts discovered, after trial must be raised for the first time in the district court. Post-conviction counsel knew or should have known that appellate counsel was ineffective for not having done so. Additionally, when the district court judge, Frank A Marullo, Jr., denied Moses' application, his attorney knew or should have known that he must apply for supervisory writs within thirty days or at least request an extended date for filing. *See,* The Louisiana Rules of Court. The truth is that lawyers must know the law within the jurisdiction that they practice.

On the other hand, Moses asserts that, if Judge Marullo or the appellate court had allowed him a full and fair opportunity to an expanded record, he would have satisfactorily explained any procedural default. More troubling and significant to the outcome, Judge Marullo nor the appellate court justices could credibly have resolved any factual dispute — without first ordering the State to answer or allowing Larry Moses to explain fully, why he failed to raise his claims on appeal or in the post-conviction context. Although the constitutional requirements of consistency and fairness have long been reconcilable — it is clear these tribunals are not prepared to answer Moses' challenges of fact and law. Of course, such judicial mistakes are manifestly wrong. Just laws wrongly applied are more tyrannical in nature than the adoption of no laws or the adoption of unjust laws. Where just laws are wrongly applied, the victim cannot tailor his conduct to avoid punishment. On the other hand, he can tailor his conduct to avoid the application of unjust laws justly applied. Thus, there is no greater wrong, greater weakness, or greater cruelty than the unjust application of just laws. **J. Simon,** *Law In The Cajun Nation,* at 218 (1993).

Mr. Moses' is entitled to a reversal of his convictions and sentences.

## CONCLUSION

Petitioner respectfully requests that this Honorable Court grant his Petition for Writ of Habeas Corpus and vacate his conviction and sentence.

Respectfully Submitted,

Mr. Larry Moses
DOC #339562, Camp C Jaguar
Louisiana State Penitentiary
Angola, La 70712

## CERTIFICATE OF SERVICE

I, Mr. Larry Moses, hereby certify that I have served a true and correct copy of the above and foregoing application for writ of habeas corpus and memorandum in support upon District Attorney's Office, Leon A. Cannizzaro, D.A. (Interim), Suite 700, 1340 Poydras Ave., New Orleans, La. 70112-1267 and United States District Court for the Eastern District of Louisiana, by hand delivering the same to prison authorities at the Louisiana State Penitentiary, postage prepaid and correctly addressed and certified on this 19th day of March.

Mr. Larry Moses