FOURTH CIRCUIT COURT OF APPEALS

NO. 96-KA-0641

**RECEIVED**

MAR 20 2013

Legal Programs Department

SCANNED at LSP and Emailed
3-20-13 by _Bm_ . 135 pages
date        initials  No.

STATE OF LOUISIANA

VERSUS

LARRY MOSES

Appeal from the Criminal District Court No. 371-524, Section
"D", Parish of Orleans, Honorable Frank Marullo, Judge.

ORIGINAL BRIEF ON BEHALF OF DEFENDANT

Submitted by:

SHERRY WATTERS  Bar No. 1638
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER PROGRAM
2700 TULANE AVE., ROOM 112
NEW ORLEANS, LA. 70119
(504)821-8101

# EXHIBIT "1"

<u>STATUTES</u>

Article V, Section 10 of the Louisiana
  Constitution of 1974                          1

Article I, Section 19 of the Louisiana
  Constitution of 1974                          3


L.S.A.-R.S. 14:30 (3)

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| STATEMENT OF JURISDICTION | 1 |
| STATEMENT OF THE CASE | 1-4 |
| ASSIGNMENT OF ERROR | 4-5 |
| ARGUMENT | 5-12 |
| CONCLUSION | 13 |
| CERTIFICATE OF SERVICE | 13 |

## INDEX OF AUTHORITIES

CASES

Jackson v. Virginia 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)

State v. Andrews 452 So.2d 687 (La. 1984)

State v. Banks 496 So.2d 1099 (La. 4 Cir. 1986)

State v. Brady 414 So.2d 364 (La. 1982)

State v. Brown 504 So.2d 639, 640 (La. 4 Cir. 1987)

State v. Bordenave 660 So.2d 1207, 93-1682, 8/23/95 (La. 4 Cir. 1995)

State v. Corley 93-1934 (La. 3/11/94), 633 So.2d 151, 154

State v. Gerrel 499 So.2d 383 (La. 4 Cir. 1986)

State v. Heck 560 So.2d 611 (La. 4 Cir. 1990)

State v. Hollingsworth 337 So.2d 461 (La. 1976)

State v. Lee 381 So.2d 792 (La. 1980)

State v. Long 408 So.2d 1221 (La. 1982)

State v. Mack 403 So.2d 8 (La. 1981)

State v. Mussall 523 So.2d 1305 (La. 1988)

State v. Stewart 458 So.2d 1289 (La. 1984)

State v. Tyler 342 So.2d 574, 582 (La. 1977)

State v. Vaughn 431 So.2d 763 (La. 1983)

State ex rel Wikberg v. Henderson 292 So.2d 505 (La. 1974)

State v. Willie 360 So.2d 813 (La. 1978)

Colle v. Henderson 350 F. Supp. 1010 (U.S.D.Ct., E.D.La. 1972)

## STATEMENT OF JURISDICTION

The defendant was convicted in an Orleans Parish jury trial and timely filed a Motion for Appeal on November 20, 1995 and January 11, 1996.  By virtue of Article V, Section 10 of the Louisiana Constitution of 1974, this Court is vested with jurisdiction over this appeal.

## STATEMENT OF THE CASE

LARRY MOSES was charged, by grand jury indictment, with violating two counts of L.S.A.-R.S. 14:30, relative to the alleged murder of Alva Causey and Daniel Ratcliff, respectively, on January 4, 1994, while having the specific intent of killing or doing great bodily harm to more than one person (R.1). Hearings on his motions to suppress the evidence and identification were begun (R.13), but there is no indication of completion or the rulings in the record.  The State's Motion to use other crimes evidence was granted (R.18).

The defendant was found competent to assist counsel (R. 17). After three days of trial by jury, the defendant was found guilty as charged on each count.  But the jury deadlocked in the penalty phase (R.33-37).  He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence on each count (R.38).  His oral motion for appeal was granted on November 20, 1995, and the written motion was granted on January 11, 1996.

Officers Willie Bickham and Nathan McGee testified that they were called to the corner of Felicity and Humanity Streets in New Orleans on January 4, 1994, at 1:00 a.m. and found a black female, later identified as Alva Causey, on her side with a shot to her head and a black male beside her, face up with a shot to his head.  The male, later identified as Daniel Ratcliff, was still alive.  Emergency medical services were called, along with the crime lab officers and homicide officers.  Of the nearly twenty people on the scene, there were no witnesses (Tr.17-30).

1

Officer Wayne Rumore of homicide division took over the investigation. When he arrived at the scene, Causey had been moved and Ratcliff had been taken to the hospital. Two .25 caliber casings and one live round were found on the scene. Along with Ratcliff's shirt and cap, the casings were recovered by the crime lab. The crime lab officer also made a diagram of the scene (Tr. 87-8). Although an alleged witness was interviewed at 2344 Feliciana Street, there were no warrants issued for the defendant until June 6, 1994.

Officer Rumore testified that on June 6, 1994, he got a call from Frederick Stamps, met with him along with Officer Ronquillo, and brought him into the office. He conducted a photo line-up wherein Stamps identified the defendant as the perpetrator. Officer Ronquillo testified about the line-up (Tr.52-7). The officer knew of a fight between Stamps and the defendant that had occurred in May of 1994. Stamps had known Larry Moses for years (Tr.31-51). The defendant was arrested June 25, 1994, in Marietta, Georgia (Tr.73-4).

Dr. Monroe Samuels, an expert in forensic pathology, testified that Dr. Newman from his office conducted autopsies on Alva Causey and Daniel Ratcliff. The autopsy of Causey showed that she was three and one half months pregnant and had cocaine in her system at the time of her death. She died of a single gun shot above her left ear in a horizontal path. No drug testing was done in the autopsy of Ratcliff, as emergency intervention that was attempted would have voided any results. He died of a single gun shot above his right ear in a horizontal path. There was no stippling or powder burns in either wound. Both bullets were recovered (Tr.3-10).

Officer Byron Winbush, without being qualified as an expert, testified that he examined the two bullets that were recovered in the autopsies and the two casings that were recovered on the scene. He testified that the bullets were similar, but not the same, and could not have been fired from a .22 caliber weapon that the district attorney asked him to examine. He testified

2

that the two cartridges were fired from the same weapon (Tr.75-86).

June Hayes testified that she knew Larry Moses, Alva Causey and Daniel Ratcliff all of her life and that they knew each other. She said that she was drinking and talking with Causey and Ratcliff on January 4, 1994, at her great uncle's house at 3244 Feliciana Street. Ratcliff left to get beer for Causey. When he did not return, Causey went to find him. While they were gone, Ms Hayes went to the bathroom. When she came out, she heard three voices outside through the closed window. Causey and Ratcliff were facing her, but she could not see the face of the third person. She could not describe the third person's hair, face or skin.

The third person was demanding money and ordering them to lay on the ground. Ms Hayes went to get her uncle, who was sleeping. When she next looked out the window, she heard two shots then saw two bodies in the street. She saw Ratcliff shot first, then Causey. She called police. The voices were not 100% clear. She said that she testified at the grand jury that she believed 70 to 75% that it was Larry Moses' voice. She was not sure. She could not identify the defendant (Tr.70).

Ms Hayes went outside. Ratcliff was still alive, but not talking. She saw Frederick Stamps on the corner, but no one else in the neighborhood. Larry Moses lived across the street but was not outside. Other neighbors came out after the shooting. She testified at trial that she was not identifying Larry Moses as the perpetrator.

Frederick Stamps testified that he was returning from a trip to the store to buy beer when he passed Larry Moses, Alva Causey and Daniel Ratcliff, all of whom he knew. He said he was not intoxicated. Stamps claimed that when he spoke to the threesome, the defendant told him to get away. He did not see a gun. He thought they were arguing. When he got fifteen to twenty feet away, he heard two bangs and he ran. He claimed he saw the defendant walk away and Causey and Ratcliff on the ground.

3

Stamps said he went to his house but no one answered the door so he went to a friend's house (Tr.89-131). Stamps did not return to the scene to talk to police, nor did he call police.

It was not until June of 1994, after a fight with the defendant that Stamps went to police, picked the defendant from a line-up and identified him as the person who shot Causey and Ratcliff in January. (He said he was not afraid of the defendant and that Moses had not threatened him.) Stamps testified that he was shown one photograph of the defendant before being shown the line-up (Tr.120-3). Larry Moses' motion for mistrial, based on the improper photo line-up procedure which had not been disclosed prior to trial, was denied (Tr. 156-7).

Stamps claimed he saw the defendant with a woman, Gail Jenkins, whom he had dated. In May of 1994, the woman called him to the car at Montegut and Humanity Streets and then he got in an argument and a fight with Larry Moses. He admitted that he was very angry at Moses, but denied that the argument was about the woman.

In the fight, Stamps' arm was broken. He refused emergency medical treatment until the police came. They could not find the defendant at his house. The police took him to Charity Hospital, but he later left against medical advice. He called police and made the identification of the defendant for the January incident. On cross examination, he admitted that the fight with Moses was over money owed Jenkins for a "trick date". He said that when he went to police in June, it was "personal" and he wanted justice for himself, but he did not care about getting justice for Causey and Ratcliff (Tr.118-9).

The defense witnesses were called out of turn. Oralee Stevenson, the defendant's aunt, and Mack Moses, the defendant's father, each testified that Larry Moses was at his aunt's house in Bogalusa, Louisiana, on January 4, 1994. They said he went there before the Christmas holidays and stayed through the Saturday following, or approximately January 6 or 7, 1994 (Tr.135-155).

4

For the State, Katherine Ratcliff identified pictures of her son. Officer Scott Adams of the Bogalusa Police Department testified that he showed the district attorneys around Bogalusa and assisted them in interviewing Ms Stevenson. Adams said that Ms Stevenson was unsure of dates during the interview , but consistently maintained that Larry Moses was at her home several weeks during the holidays.

The defendant objected to the court instructing the jury as to flight (Tr. 173-4). The jury found the defendant guilty as charged on both counts, but deadlocked in the penalty phase.

### ASSIGNMENT OF ERROR NO. 1

The State failed to prove beyond a reasonable doubt, as to each count, that the defendant had the specific intent to kill or to great bodily harm to more than one person; further, it violated the prohibition against double jeopardy to charge the defendant with two killings while reciprocally alleging the aggravating circumstance of "specific intent to kill or to great bodily harm to more than one person" in each count.

### ASSIGNMENT OF ERROR NO. 2

The State failed to prove the defendant's identity as the perpetrator beyond a reasonable doubt.

### ASSIGNMENT OF ERROR NO. 3

The trial court erred in allowing evidence of and giving a jury instruction on "flight" (Tr. 173-4).

### ARGUMENT NO. 1

The State failed to prove that LARRY MOSES had the specific intent to kill or do great bodily harm to more than one person, as required by L.S.A.-R.S. 14:30(3). In State v. Andrews 452 So.2d 687 (La. 1984) and State v. Stewart 458 So.2d 1289 (La. 1984) the Louisiana Supreme Court reversed first degree murder convictions based on this section of the statute under

circumstances where the State had failed to prove that the accused specifically intended by the same act to kill or do great bodily harm to more than one person. The Court held that L.S.A.-R.S.14:30(3) requires that the offender must actively desire that the death or great bodily harm of more than one person result from the act or acts by which he committed to the homicide or by an act inseparable therefrom Stewart, supra, at 1291 (Emphasis theirs).

In Stewart, the defendant had got in an argument in a house with several people. Some went outside to escape the defendant. Inside the house, the defendant killed one person. Then he went outside and shot another in the chest, wounding her. The Court reversed the first degree murder conviction and entered a verdict of second degree murder after finding that the shooting inside the house did not put more than one person in danger of death or great bodily harm and was not inseparable from the shooting outside the house. See also State v. Gerrel 499 So.2d 383 (La. 4 Cir. 1986) and State v. Willie 360 So.2d 813 (La. 1978).

LARRY MOSES' alleged action of shooting Causey or Ratcliff each individually does not indicate an active desire to kill or inflict great bodily harm on more than one person. Nor was the act of shooting Causey inseparable from the later act of shooting Ratcliff, or vice versa. The two alleged acts by Larry Moses are separable and distinct. Neither created risk of harm to more than one person or proved a desire to harm more than one person.

Further, in State v. Bordenave 660 So.2d 1207, 93-1682, 8/23/95 (La. 4 Cir. 1995), this Court discussed State v. Tyler 342 So.2d 574, 582 (La. 1977) for the principle that the single act that results in the death of one person must also put others in danger or kill another. In Tyler, the defendant shot into a crowd and killed one person so the conviction was upheld. In Bordenave, where, as here, the defendant allegedly fired separate shots distinctly at two separate people, the attempted first degree murder conviction was reversed and a verdict of attempted second degree murder was entered. Minimally, Larry Moses'

conviction for first degree murder must be reversed and a verdict of second degree murder entered under the provisions of L.S.A.-C.Cr.P. Art.821(E).

Moreover, the prohibition against double jeopardy was violated by reciprocally using the killing of Causey or Ratcliff as the aggravating factor to make the killing of the other a first degree murder. Only two alleged victims are involved here. While it may have been permissible to charge the defendant with the murder of one victim, using the other crime against the other to elevate the charge to a first degree murder, it is not permissible to also charge him with the first degree murder of the other. It is analogous to the double jeopardy cases involving the felony murder rule.

The prohibition against double jeopardy protects an accused not only from a second prosecution for the same offense, but also from multiple punishments for the same criminal conduct State v. Banks 496 So.2d 1099 (La. 4 Cir. 1986); State v. Vaughn 431 So.2d 763 (La. 1983). Where a murder charge to which the defendant had pled guilty was based on the felony murder provision of the law and founded on armed robbery, a conviction on the armed robbery based on the same offense was double jeopardy Colle v. Henderson 350 F. Supp. 1010 (U.S.D.Ct., E.D.La. 1972). Likewise, the guilty verdict and sentence for both counts of first degree murder, each using the other as an aggravating circumstance, violates double jeopardy and the defendant's conviction for one of the charges must be reversed.

The defendants' convictions for attempted armed robbery following their convictions for felony murder arising out of the same incident, in which the attempted robbery was the underlying felony, violated the prohibition against double jeopardy State ex rel Wikberg v. Henderson 292 So.2d 505 (La. 1974). The first degree murder charge as to Alma Causey in count one, made a first degree charge due to the killing of Daniel Ratcliff, arose out of the same incident and required the same proof as the first degree murder charge in count two as to Daniel Ratcliff, which was made

7

a first degree charge due to the killing of Alma Causey. The same evidence used to prove count one proved count two. Proof of count one required proof of no additional element that was not needed for count two. LARRY MOSES' conviction and sentence on one of the counts must be reversed as it violates double jeopardy to convict him of both counts.

## ARGUMENT NO. 2

The constitutional standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt <u>Jackson v. Virginia</u> 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>State v. Heck</u> 560 So.2d 611 (La. 4 Cir. 1990). The State was required to prove beyond a reasonable doubt that Alma Causey and Daniel Ratcliff were murdered and that the defendant committed the murders. The State failed in its burden in that it failed to prove the identity of Larry Moses as the perpetrator beyond a reasonable doubt.

The State had no circumstantial or scientific evidence whatsoever that linked Larry Moses to this crime. June Hayes, a woman who knew the victims as well as the defendant all of her life, could not and would not identify the defendant or his voice as the perpetrator (Tr.63-4, 68-70). There was no one seen on the street after the incident. There was no evidence of bad blood between the defendant and Causey or Ratcliff. In January of 1994, Frederick Stamps was not at the scene to talk to police, nor did he call police. He said he was not afraid of the defendant and that Moses had not threatened him. The State's case lies entirely on Frederick Stamps' allegations. As these allegations are totally unreliable, incredible and without any corroboration, they cannot support two first degree murder convictions.

8

There were no witnesses, no calls and no leads until
Frederick Stamps got in a fight with Larry Moses on May 20, 1994.
In the fight, Stamps' arm was broken.  Thereafter, Stamps accused
Moses of the January murders because, as he admitted, it was
"personal" and he wanted justice for himself, but he did not
care about getting justice for Causey and Ratcliff (Tr.118-9).

The reviewing court may not disregard its duty to consider
whether the evidence is constitutionally sufficient simply
because the record contains evidence that tends to support each
fact necessary to constitute the crime State v. Mussall 523 So.2d
1305 (La. 1988).  The reviewing court is not permitted to
consider just the evidence most favorable to the prosecution but
must consider the record as a whole since that is what a rational
trier of fact would do Mussall, supra.  If rational triers of
fact could disagree as to the interpretation of the evidence, the
rational trier's view of all the evidence most favorable to the
prosecution must be adopted Mussall, supra.  The fact finder's
discretion will be impinged upon only to the extent necessary to
guarantee the fundamental protection of due process of law
Mussall, supra.

Considering the record as a whole, the State failed to sat-
isfactorily prove that Larry Moses killed Alma Causey and Daniel
Ratcliff.  In any criminal prosecution, the State must sustain
the heavy burden of proving every element of the crime charged
beyond a reasonable doubt L.S.A.-R.S.15:439; State v. Hollings-
worth 337 So.2d 461 (La. 1976); State v. Brady 414 So.2d 364 (La.
1982).  The State is required to negate any reasonable
probability of misidentification in order to carry its burden of
proof Brady, supra, at 365; State v. Long 408 So.2d 1221 (La.
1982).  In a criminal trial, prima facie evidence of identity is
not sufficient.  There must be proof of identity beyond a
reasonable doubt State v. Brown 504 So.2d 639, 640 (La. 4 Cir.
1987).

While Frederick Stamps knew the defendant and there is no
problem with his perception or ability to see, his testimony

9

illustrates that there are many problems with his accuracy, credibility and reliability.  He was admittedly an extremely biased witness with a blatant grudge against the defendant.  He did not come forward with his alleged knowledge about the perpetrator until after he and the defendant had a serious altercation in which he was the loser.  He claimed no fear or threats to explain his delay (Tr. 97-8).

By Frederick Stamps' account and the State's incredulous theory, Larry Moses killed two people across the street from his home and in full vision of Stamps.  Then he stayed in New Orleans for four months until he got in a fight with Stamps in May and broke Stamps' arm.  Fearing arrest for breaking Stamps' arm, he promptly left town and was arrested in Georgia (something he had not done after allegedly committing two murders).  The story as given by Stamps and used by the State makes no sense and lacks all indicia of reliability.  It does not support proof beyond a reasonable doubt that Larry Moses was the perpetrator.  His convictions must be reversed and new trial ordered.


### ARGUMENT NO. 3

The killing of Ms Causey and Mr. Ratcliff occurred on January 4, 1994, at Feliciana and Humanity Streets.  On May 20, 1994, according to State's witness, Frederick Stamps, Larry Moses was still in the neighborhood where the incident occurred. Stamps claimed that on that date, four months after the incident, he and Moses were involved in a fight at the corner of Montegut and Humanity Streets, only a few blocks away.  Yet evidence of the defendant's arrest in Marietta, Georgia, on June 25, 1994, was presented (Tr. 3-4) and, over defense objection, the court instructed the jury on "flight" (Tr. 13-4).

While evidence of flight at the time of arrest may show consciousness of guilt and is relevant and generally admissible, evidence of "flight" four months after the incident has no relevance and is inadmissible.  It was clear error for the court to instruct the jury that leaving the state four months after an

10

incident could be used to infer guilty knowledge or consciousness
of guilt.

In this case, as in State v. Bordenave 660 So.2d 1207, 93-
1682, 8/23/95 (La. 4 Cir. 1995), the defendant knew that Stamps
called police relative to the fight over the "trick date" with
Gail Jenkins and he was sought on those unrelated charges. That
alleged incident occurred in May of 1994 and the defendant was
arrested in Georgia in June of 1994. Moses' alleged "flight" was
connected to that incident, not the January of 1994 murder
charges. Thus, admission of evidence about that incident was
not probative. It was error to allow the evidence and the
instruction on "flight".

In State v. Lee 381 So.2d 792 (La. 1980), the Court held
that evidence of flight six weeks after the incident was
inadmissible, as it was not contemporaneous enough to show guilty
conscious. A four month gap between the alleged incident and
leaving the area is not contemporaneous and is not indicative of
the defendant's state of mind. Evidence of his arrest in Georgia
was not admissible. As in Bordenave, supra, at 1215, "Conscious-
ness of guilt of the crime charged could not reasonably be
inferred from his flight and the prejudicial effect outweighed
its probative value."

Moreover, the court's instruction that the June "flight"
could infer guilty knowledge was highly prejudicial and requires
that the conviction be reversed. No "flight" occurred after the
alleged January shootings. The admission of the evidence of
"flight" in itself was not as prejudicial as the court's
instruction on "flight" and the inferences to be made. An
objection to the judge's general charge is properly preserved if
made immediately after the jury is retired, particularly if that
is the first opportunity to object State v. Mack 403 So.2d 8 (La.
1981). Larry Moses promptly objected to the instruction on
"flight" (Tr. 173-4).

The instruction on "flight" was not harmless error as it
gave the jury a way to infer guilty knowledge or a state of mind

11

for murders that were not sufficiently proven attenuated to his alleged "flight". The "flight" in June of 1994 was not proven to be related in time, motive or reason to the alleged January 1994 crimes.

> "The task of a reviewing court conducting a harmless error analysis is to determine whether the error contributed to the verdict or whether the force of the evidence presumably considered by the jury in accordance with the instructions of the court is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on the that evidence would have been the same in the absence of the error" Bordenave, supra, at 1215, citing State v. Corley, 93-1934 (La. 3/11/94), 633 So.2d 151, 154 (emphasis added).

The evidence of Moses' arrest in Georgia in June of 1994 alone was harmless until the court made the further error of instructing the jury, over defense objection, that it could be used to infer guilty consciousness.

In this case, Stamps was the only witness who identified the defendant. Stamps' credibility was severely undermined by his failure to report the crime or contact officers for four months until he and the defendant were involved in an unrelated incident of their own over a woman and money in May of 1994. June Hayes refused to identify the defendant, or even affirmatively identify his voice, as that of the shooter. Without the prejudicial instruction on "flight" which allowed the jury to impute a guilty knowledge not sufficiently proven to be related to these charges, the evidence of the correctness of Stamps' accusation and identification of defendant was lacking. Moreover, the defendant's alibi witnesses were strong. Thus, the evidence was not so overwhelming as to establish beyond a reasonable doubt that the verdict would have been the same absent the error. LARRY MOSES' conviction must be reversed and new trial ordered.

12

## CONCLUSION

In view of the facts and law set forth herein and the entire record of the case, the defendant-appellant prays that this Honorable Court reverse his conviction and order the State to afford him a new trial.

New Orleans, Louisiana, this _____ day of June, 1996.

Respectfully submitted,

SHERRY WATTERS Bar No. 1638
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER
    PROGRAM
2700 TULANE AVE., RM. 112
NEW ORLEANS, LA. 70119
(504)821-8101

## CERTIFICATE

I hereby certify that a copy of the foregoing Original Brief of Appellant has been duly served on Appellee by hand delivery of one copy to the Office of the Assistant District Attorney for the Parish of Orleans on this _____ day of June, 1996.

SHERRY WATTERS

13

MACK MOSES 11/96
LADL 002008567
5307 PAULINE DR PH 504-288-0910
NEW ORLEANS, LA 70126

DATE 4-16-01

PAY TO THE
ORDER OF C Gerry Wainwright $ 400.00

Four Hundred _____ DOLLARS

HIBERNIA
NATIONAL BANK

Mack Moses

FOR Larry Moses

⑆065000090⑆ 181 65⑆ 7317 3 05.22 ⑆0000040000⑆

---

RECEIPT No. 1487489

DATE — 01/8/01 —

RECEIVED FROM Mack Moses $300.00

Three hundred Dollars — DOLLARS

○ FOR RENT
○ FOR Larry Moses

| ACCOUNT | 700 00 | ○ CASH | FROM Mack | TO C.S.W |
| PAYMENT | 300 00 | ○ CHECK | | |
| BAL DUE | 400 00 | ○ MONEY ORDER | BY M. Keith | |

---

Receipt No. 164000

DATE

RECEIVED FROM Mack Moses $1,000.00

One Thousand Dollars — DOLLARS

○ FOR RENT
○ FOR Post conviction

FROM TO C.S. Wainwright

| ACCOUNT | 2000 00 | ○ cash |
| PAYMENT | 1000 00 | |
| BALANCE DUE | 1000 00 | BY M. Keith |

---

RECEIPT No. 0977002

DATE 10/9/2000

RECEIVED FROM Larry Moses Sr $300.00

Three hundred Dollars — DOLLARS

○ FOR RENT
○ FOR Larry Moses P/C

| ACCOUNT | | ○ CASH | FROM Larry | TO C.M.W |
| PAYMENT | 300 00 | ○ CHECK | | |
| BAL DUE | 700 00 | ○ MONEY ORDER | BY M. Keith | |

Exhibit

# EXHIBIT "2"



OFFICE OF THE DISCIPLINARY COUNSEL

**LOUISIANA ATTORNEY DISCIPLINARY BOARD**

4000 S. Sherwood Forest Blvd., Suite 607 • Baton Rouge, Louisiana 70816 • (225) 293-3900 • 1-800-326-8022 • FAX (225) 293-3300

# ETHICAL CONDUCT COMPLAINT

## PART A: INFORMATION ABOUT YOU · PLEASE KEEP CURRENT

1. FULL NAME: Larry Moses # 339562 ,Pine-2, La. State Prison, Angola, La. 70712

2. HOME ADDRESS: N/A

   CITY: N/A    STATE La.    ZIP 70712

   TELEPHONE: area code ( ) N/A

3. EMPLOYER: N/A

   WORK ADDRESS: N/A

   CITY: N/A    STATE La.    ZIP 70712

   TELEPHONE: area code ( ) N/A

4. NAME OF PERSON WHO CAN ALWAYS REACH YOU: Mack Moses

   ADDRESS & TELEPHONE:

## PART B: INFORMATION ABOUT ATTORNEY

1. NAME OF ATTORNEY: Gary Wainwright

2. ADDRESS: 2739 Tulane Ave.

   CITY: New Orleans    STATE Louisiana    ZIP 70119

   TELEPHONE: area code ( 504 ) 822-3104

3. WHEN DID YOU HIRE THIS ATTORNEY? June 26, 1998

4. WHAT DID YOU HIRE THIS ATTORNEY TO DO FOR YOU? Representation on Post Conviction Relief in State Court and Federal Habeas Corpus Relief

5. WHAT WAS YOUR FEE ARRANGEMENT WITH THE ATTORNEY? Twenty-Eight Hundred Dollars

1

The Office of the Disciplinary Counsel and The Disciplinary Board are established by the Supreme Court of Louisiana to administer the lawyer discipline and disability system by investigation, prosecution and conducting fact finding into complaints against attorneys in Louisiana.

LOUISIANA ATTORNEY DISCIPLINARY BOARD

## PART C: EXPLANATION OF YOUR COMPLAINT

State in detail why you think this attorney has done something improper or has failed to do something which this attorney should have done. Include the names and addresses of all persons who know something about your grievance. Attach copies of court papers, cancelled checks or receipts showing payments of attorney's fee, and other documents relevant to your grievance. Attach additional 8 1/2" x 11" sheets of paper if you need more space for your explanation.

On June 26, 1998 my Father Mr. Mack Moses hired attorney Mr. C. Gary Wainwright to represent me in my criminal case. Attorney Wainwright was paid the sum of Twenty-Eight Hundred Dollars to file for State Post Conviction Relief and Federal Habeas Corpus Relief on behalf of Larry Moses. I was awaiting a decision from the Louisiana State Supreme Court in 1998 when Attorney Wainwright was hired. The crux of this complaint is that this attorney did not inform me that the Supreme Court had denied my writ on May 8, 1998. I had one year from that date to file my post conviction in state court so that the one year limitation period in federal court would not expire. I consistently wrote letters to this attorney concerning the time limitations, he never responded, my family consistently phoned him and expressed my concerns and he told them that the Post Conviction relief application had been filed. However, it had not been and was not filed by this attorney until January 10, 2000, eighteen months after the Louisiana Supreme Court denied my Appeal, and at that time my federal court one year deadline had expired meaning because of the late filing of post conviction relief in state court the one year time limitation for filing in federal court expired. See AEDPA 28 USC Sec. 2244(d)(1). The attached documentation will prove that I made every effort possible to aid this attorney in protection of the federal time limits.

2

FACTS

On June 26, 1998, Larry's father Mack Moses Hired attorney
Mr. C. Gary Wainwright to represent Larry's Post Conviction Ap-
plication, he was paid his fee of Twenty-Eight Hundred Dollars
in fool. The Copy of Check Receipts are attached as Exhibit "A"
in this complaint. Approximately one six week period passed and
Larry's sister contacted attorney Wainwright concerning the stat-
us concerning post conviction. Attorney Wainwright told Larry's
sister that he had delivered the post conviction application to
the courts. This attorney told Larry he was also sending him a
copy of this post conviction brief. He never did, which caused
Larry concern. Larry and his sister contacted the Clerk of Court
in Orleans Parish and was told there was no record of Larry's
Post Conviction Relief Application filed there.

Larry's father made an appointment with Wainwright told him in
person he was concerned with the matter and was told by Wainwight
that the petition was filed and that the Clerk must have misplaced
it as they sometimes do. Wainwright told Larry's father he would
take care of it. A month later Larry's sister again contacted the
Clerk of Court and was again told there was nothing filed there
on his behalf.

Larry, with the aid of inmate counsel here at the institution
put together a letter to Wainwright concerning the "effective Death
penalty Act and its one year limitation period, Wainwright never
responded to any of the many letters Larry wrote him concerning
the post conviction and federal one year time limitation. They are

attached hereto and made a part of this complaint and listed as
Exhibits "B", 1,-8. The record will reflect that the Post Con-
viction Relief Application was filed in Orleans Criminal Dist-
rict Court by attorney Wainwright on Jan. 10, 2000. The Record
will reflect that at that time, Larry's one year limitation for
filing in federal court had elapsed. Wainwright's actions preju-
diced Larry's federal disposition of his claims due to his late
filing.

The Orleans Criminal District Court denied post conviction re-
lief, the fourth  Circuit Court of Appeal denied writs and the Loui-
siana Supreme Court denied relief. Counsel Wainwright never noti-
fied Larry of the Supreme Court denial. Larry contacted the Office
of Wainwright and was told by the paralegal that no ruling had
been made by the Supreme Court, about ninety days later, March
10, 2004, this paralegal again told Larry no ruling had been made
by the Supreme Court.

Larry with assistance from inmate counsel discovered in West
Law that Larry's writ had been denied since Nov. 7, 2003. Larry's
father then called Wainwright but could not catch him, Wainwright
failed to return his calls. Larry wrote Wainwright several times
concerning this and Wainwright did not respond. On April 2, 04,
Larry's sister spoke with Wainwright's paralegal who told her
that Larry's case was being handled on state level. She asked
Wainwright to call and explain what was going on later, Counsel
did not call.

On May 10, 2004, Larry's "Mother-in-law" contacted Wainwright by phone and was told he was working on Larry's case. She asked him about some letters Larry forwarded to him concerning the crime he was charged with, that's when Wainwright told her, he was working with the D.A. Office on Larry's case. She told Wainwright, he should contact Larry and let him know what was going on with his case and Wainwright told her he would, he never did.

Larry wrote head D.A. Mr. Eddie Jordan concerning the information Wainwright had given him and his family about his meeting and consulting with Mr. Jordan on Larry's case. Jordan responded and stated that he knew nothing of this. Larry has been left hanging in limbo, and Wainwright has damaged the case beyond repair. He cannot breath life back into this case whether it be state or federal the prejudice is great as should be the compensation.

Larry prays that this board find in his favor.

LOUISIANA ATTORNEY DISCIPLINARY BOARD

LIST ALL DOCUMENTS ATTACHED: Exhibit "A" Check Receipts; B.(1)-(8), C. Copy of

letter to Eddie Jordan; D. Copy of letter from Wainwright Dated 1/

5/2000, E. Letter to Eddie Jordan, F. Copy of Angola Prison Mail

register showing incoming mail to Larry, by whom and the dates.

DATE OF SIGNING: _____

_Larry Moses_
COMPLAINANT

_____
COMPLAINANT

RETURN THIS FORM TO:      Office of the Disciplinary Counsel
                         4000 S. Sherwood Forest Blvd., Suite 607
                         Baton Rouge, Louisiana 70816

3

On Aug. 2, 2004, I contacted Mr. Wainwright office concerning my case. But to no avial in speaking with him. I spoke with the paralegal to inform him that, I had learned what was wrong with my case, I express to the paralegal the finding of the inmate counsel. I explain to the paralegal, that I was letting the inmate counsel reds my (PCR) and the paralegal told me. When they finish with it, they would submit it into court on my behalf. I send the writ to Mr. Wainwright office certified mail. When I know hes office received it, I call and ask the paralegal when will he submit it. And he told me soon as possible. But this was another deception from Mr. Wainwright office staff. I come to realize that they was full of deception concerning my case. On Nov. 25, 2004 I file my own Post-conviction relief into court, with the assistance of the inmate counsel. This has been a serious failure with Mr. Wainwright misrepresentation with my case on post-conviction relief, on my behalf Sir! My case is in serious trouble with the courts!

        The last Exhibit

(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

Postage $ 2.90
Certified Fee 2.30
Return Receipt Fee (Endorsement Required) 1.75
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $ 6.95

Sent To Orpans Criminal District Court
Street, Apt. No.; or PO Box No. 2700 Tulane Ave
City, State, ZIP+4 Nu Orleans la 70119

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

Postage $ 2.67
Certified Fee 2.30
Return Receipt Fee (Endorsement Required) 1.75
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $ 6.72

Sent To Colbrey Wainwright Attorney at Law
Street, Apt. No.; or PO Box No. 405 S. Braad st.
City, State, ZIP+4 New Orleans, La. 70119



*C. Gary Wainwright*
ATTORNEY AT LAW

January 5, 2000

Larry Moses #339562
Magnolia #2 Dorm
Lousiana State Penetentiary
Angola, La. 70712

Re: Post Conviction Relief

Dear Mr. Moses:

Please find the original Petition For Post Conviction Relief and Memorandum In Support Of Application For Post-Conviction Relief. Your signature is required on both the Petition and Memorandum. I have marked a red X where you are requested to sign. You will also be required to have a Notary witness your signature which I am sure they have at the prison.

I have enclosed a self-addressed stamped envelope in order to facilitate the return of these documents to our office. After we have filed your Post Conviction we will send you a date stamped copy.

Thank you for your attention to this matter.

Very truly yours,

C. Gary Wainwright

CGW/kl

2739 TULANE AVENUE — NEW ORLEANS, LOUISIANA 70119
(504) 822-3104   FAX (504) 822-4697
Dues Paying Member:
American Trial Lawyer's Association, American Civil Liberties Union, National Association of Criminal Defense Attorneys, Louisiana Association of Criminal Defense Attorneys

# EXHIBIT "3"

CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

LARRY MOSES
DOC# 339562
Louisiana State Penitentiary
Angola, La. 70119                    CASE NO. 371-524, SEC. D

VERSUS

BURL CAIN, WARDEN
LOUISIANA STATE PENITENTIARY

PETITION FOR POST-CONVICTION RELIEF (Uniform Application)

1.  Name and location of court which entered the judgment of conviction challenged: CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS

2.  Date of judgment of conviction: October 31, 1995

3.  Length of sentence: Life Imprisonment & Life Imprisonment
                         (Running concurrent)

4.  Nature of offense involved: Two Counts of First Degree Murder

5.  What was your plea:

    (a) Not guilty (X)

    (b) Guilty ()

    (c) Not guilty and not guilty by reason of insanity ( )

    (d) Name and address of the lawyer representing you at your plea: Robert Jenkins, Orleans Indigent Defender Program
        2700 Tulane Avenue #112, New Orleans, La. 70119

    (e) Was the lawyer appointed (x) or hired ( )?

6.  Kind of Trials: Jury

7.  (a) Name and address of lawyer representing you at your trial: See 5(d).

    (b) Was the lawyer appointed (X) or hired ( )?

8.  Did you testify at the trial ( )yes (X)no?

9.  (a) Give the name and address of the lawyer that represented you at your sentencing: See 5(d)

10. Did you appeal from the judgment of conviction?

    Yes (X) No ( )

11. If you did appeal

TRUE COPY
Frank A. Marullo for
MINUTE CLERK
01-26-00

EXHIBIT "4"

(a) Citation, docket number, date of opinion by the Appeal

Court: **State of Louisiana vs. Larry Moses, Fourth**

**Circuit Court of Appeals, No. 96-KA-0641;**

**Convictions Affirmed.**

(b) Name and address of lawyer representing you on Appeal:

**Sherry Watters, O.I.D.P. 2700 Tulane Ave., New**

**Orleans, La. 70119**

(c) Was the lawyer appointed(**X**)  or hired ( )?

12.  Other than a direct appeal from the judgment of conviction

and sentence, have you previously filed any application for post-

conviction relief with respect to this judgment in any state or

federal court?  Yes ( ) No (**X**)

13.  If your answer to 12 is "yes", give the following

information: **N/A**

    (a)  (1) Name of court:

           Court.

       (2) Nature of proceeding:

       (3) Claims raised:

       (4) Did you receive an evidentiary hearing on your

           application?  Yes ( ) No ( )

       (5) Was relief granted or denied?

       (6) Date of disposition:

       (7) Citation of opinion:

       (8) Name and address of lawyer representing you: **N/A**

    (b)  (1) 1 though 9 do not apply

    (c) Have you filed any other applications for post-

conviction relief with respect to the challenged conviction?

Yes ( ) No ( )

    (d), (e) and (f) do not apply.

## CLAIM FOR RELIEF

**Claim:** Petitioner was denied effective assistance of counsel prior to and during the court of his trial.

(a) FACTS: SEE: Attached Memorandum.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:

**The record speaks for itself.**

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:

1.   **Ineffective Assistance of Counsel**


A.  Do you have in a state or federal court any petition or appeal now pending as the judgment challenged? Yes ( ) No (✔)

B.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes ( ) No (✔)

(1) through (3) do not apply.

C. Does not apply.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled including an expedited hearing on this petition.


Respectfully submitted:

X _Larry Moses_

LARRY MOSES

Date: 1, 10, 2000

**AFFIDAVIT**

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME came **LARRY MOSES**, being first duly sworn says that he has read the foregoing application for post-conviction relief and swears or affirms that all of the information therein is true and correct.

X _Larry Moses_

**LARRY MOSES**

SWORN TO AND SUBSCRIBED before me this _1_ day of _10_, 2000.

Notary Public or other person
authorized to administer an oath.

STATE OF LOUISIANA                         CRIMINAL DISTRICT COURT

VERSUS                                     PARISH OF ORLEANS

LARRY MOSES                                NO. 371-524, SEC. "D"

### MEMORANDUM IN SUPPORT OF
### APPLICATION FOR POST-CONVICTION RELIEF

Petitioner LARRY MOSES is currently confined in the Louisiana State Penitentiary by virtue of a sentence of life imprisonment at hard labor imposed in the Criminal District Court, Parish of Orleans, after he was found guilty by jury of two counts of first degree murder. Petitioner was sentenced by the Honorable Frank Marullo, Judge, Section "D", Criminal District Court. He was represented at trial by Attorney Robert Jenkins, and he was sentenced on November 20, 1995. His conviction and sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on October 1, 1997, under docket number 96-KA-0641. Due to reasons set out below, petitioner now seeks post-conviction relief in this Honorable Court.

### THE FACTS

In June 1994, Mr. Moses was arrested in the State of Georgia in connection with the murders of Alma Causey and Daniel Ratcliff on January 4, 1994, in the city of New Orleans, Louisiana. Mr. Moses was allegedly identified by one Frederick Stamps as being the person who shot both victims at the corner of Humanity and Feliciana. Thereafter, on August 18, 1994, Mr. Moses was indicted by the Orleans Parish Grand Jury on two counts of first degree murder. On October 31, 1995, he was found guilty as charged as to both counts, and because the jury deadlocked durinmg the penalty phase, on November 20, 1995, Mr. Moses was sentenced to life imprisonment on each count.

During trial, June Hayes testified that she had known the victims for years and that they were with her drinking beer on the night they were killed. After the victims went to get more beer she looked outside and saw them on a corner with a man whose back was toward her and who were telling them to get on the ground. She then stated that when she went in the back to wake up her great-uncle to tell him Alma and Daniel were being robbed, she heard two shots and ran to the door and saw her friends lying on the ground and called "911". Upon further examination, Ms. Hayes claimed that she saw the actual shooting, and although she could not identify the man who had shot her friends, she admitted telling the grand jury that she was seventy-five percent sure that the man's

1

voice was that of Mr. Moses, whom she had known almost all her life. Finally, Ms. Hayes admitted not seeing Mr. Moses at all on the night of their crime, and that she saw Frederick Stamps on the corner after the shooting.

Mr. Stamps testified that he was walking down the street and passed between the victims and Mr. Moses and inquired about what was going on. He stated that Mr. Moses told him to get away "or he would get some," so he continued walking. He then stated that after he was fifteen to twenty feet away he heard two shots and ran to a friend's house. He admitted not contacting police because it was not his business, but he added that approximately three weeks after the murders he had an argument with Mr. Moses in which Stamps accused Mr. Moses of stalking him. Mr. Stamps then stated that on May 28, 1994, he had another encounter with Mr. Moses which resulted in him being pistol-wipped.

Mr. Stamps further testified that he had a "trick-date" with a woman named Gail Jenkins, who was with Mr. Moses and that it resulted in "a robbery thing." Jenkins was later arrested. Stamps went to the hospital where he underwent surgery on his arm, and he left out the hospital the following day against medical advice. Mr. Stamps then contacted homicide police and informed the police that Mr. Moses was the person who had murdered Alma Causey and Daniel Ratcliff. On June 6, 1994, over five months after the killings, Mr. Stamps identified Mr. Moses from a photographic lineup and Mr. Moses was arrested.

At trial, Mr. Moses presented alibi witnesses who placed in in Bogalusa, Louisiana, at the time of the killings. Nonetheless, the jury returned unanimous verdicts of guilty as charged. On direct appeal, Mr. Moses argued: 1) the State failed to prove that he intended to kill more than one person; 2) the State failed to meet its burden of proving the identity of the perpetrator; 3) the trial court erred in allowing evidence of and giving a jury instruction on flight; 4) the trial court erred in refusing to disqualify a juror who was related to the victim, Daniel Ratcliff; and 5) the trial counsel rendered ineffective assistance because he did not urged that the juror be removed.

After his conviction was affirmed, Mr. Moses learned that three days before Mr. Stamps identified him, Mr. Stamps received an *Order for Protective Custody* in which it was disclosed that "Frederick Stamps is suffering from mentasl illness, shows violent behavior. Making threats against family and others in need of exam." SEE *Exhibit "A"*. This order is signed by Dr. Frank Minyard,

2

Coroner of Orleans Parish, and it should have been made known to Mr. Moses prior to trial.

Mr. Moses also learned from a lady who claimed that she did not want to get involved, Ms. Shawn McNeal, that Mr. Stamps was with her on the night of the crime and did not witness the killings. Furthermore, Mr. Moses learned that both Ms. Hayes and Mr. Stamps had been paid by one of the victim's mother, Mrs. Katherine Ratcliff, to place Mr. Moses on the scene of the crime, and that his court-appointed attorney, Mr. Robert Jenkins, failed to conduct independent investigations of the State witnesses to discredit them during trial. Accordingly, in light of the foregoing, Mr. Moses now seek post-conviction relief.

## CLAIMS INVOLVED

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PRIOR TO AND DURING THE COURSE OF HIS CRIME.

## ARGUMENT

It is well settled that a criminal defendant has the right to counsel at all critical stages of the prosecution. The right to counsel is the right to effective counsel. *Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)*. This has been interpreted to mean "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis, 280 F.2d 592,599 (5th Cir. 1960)*. In *Powell, supra*, the United States Supreme Court said that the period of time between arraignment and the beginning of trial is perhaps the most critical period where effective assistance of counsel is needed. Thorough investigation and preparation are vitally important at that stage, especially in a case such as this one, where the State's case was predicated soley on the testimony of questionable witnesses who gave contradictory testimony.

It is petitioner's contention that he was denied effective assistance of counsel prior to and during the course of his trial. Petitioner asserts this claim for two reasons: he was denied effective assistance by defense counsel's failure to thoroughly investigate the background of the primary witness, Frederick Stamps, who could have been easily discredited during the course of trial; and he was denied effective assistance during trial by failing to bring out obvious discrepancies between the testimony of Frederick Stamps and June Hayes, the two primary State witnesses who placed Mr.

3

Moses at the scene of the crime.

Mr. Moses was represented at trial by Attorney Robery Jenkins of the Orleans Indigent
Defender Program, who is primarily assigned to represent  defendants charged with first-degree
murder.  The short-comings of the Orleans Indigent Defender Program are  well-documented and
chronicled in the Louisiana Supreme Court.  Long ago, in *State v. Gilmore, 332 So.2d 789
(La.1976)*, that Court succinctly stated:

> "Had the defendant been represented by retained counsel
> perhaps we would expect the kind of diligent investigation
> for evidence which would have resulted in the earlier tracking
> down of these witnesses.  However, the defendant here, who
> was incarcerated from the time of his arrest until trial, was
> provided a defense by court-appointed counsel through the
> Orleans Indigent Defender Program.  It light of its limited
> resources we are not prepared to say that it failed to exercise
> reasonable diligence in this case.  However, even if it did, the
> defendant, as an indigent, should not be made to suffer because
> of a possible shortcoming of counsel provided by the court. *Id.
> at 793*.

More recently, in *State v. Peart, 621 So.2d 780 (La. 1993)*, the Louisiana Supreme Court
discussed at great length the duties and powers of indigent defender boards, so it is evident that
counsel, such as Mr. Jenkins in the instant matter, are often disadvantaged at the outset in
representing a client charged with a capital offense; however, each case must be determined on the
facts and circumstances of that case, so we must turn to the facts and circumstances of this case to
judge the range of competence Mr. Jenkins exercised in representing Mr. Moses in the instant matter.

This is a prosecution that was predicated on the testimony of two witnesses who gave
contradictory testimony regarding the shooting that Mr. Jenkins failed to emphasize before the jury.
First of all, Ms. Hayes testified that she saw Mr. Stamps on the corner after the shooting.  However,
Mr. Stamps testified that after passing between  the victims and Mr. Moses and going fifteen to
twenty feet away he heard two shots and ran to a friend's house.  Therefore, how could Ms. Hayes
see him on the corner where the shooting occurred after the shooting when he testified that he was
fifteen to twenty feet beyond the victims when he heard two shots and that he immediately ran to a
friend's house.  Furthermore, Ms. Hayes testified that when the perpetrator confronted her friends
his back was toward her; however, Mr. Stamps testified that when he passed between the victims and
the perpetrator the perpetrator was facing Ms. Hayes' home. *(Tr.Tr. P. 114, lines 27-29)*.  These
clear-cut contradictions  were crucial to the testimony of both witnesses, yet Mr. Jenkins failed to

4

emphasize these critical contradictions during trial or closing argument.

Moreover, Mr. Jenkins failed to thoroughly investigate the background of Mr. Stamps for had he done so, he would have discovered the *Order for Protective Custody* and set out to completely discredit Mr. Stamps' credibility before the jury. Already, it was strange that Mr. Stamps waited several months before informing police that Mr. Moses was the killer, and only after he had had some problems with Mr. Moses himself. Therefore, any evidence tending to discredit Mr. Stamps was crucial to Mr. Moses defense, and defense counsel's failure to seek out this information and use it in cross-examination amounts to ineffective assistance of counsel under the *Strickland* standard.

In *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)*, the United States Supreme Court established a standard governing claimed of ineffective assistance of counsel. Under this standard, a defendant must first show that his counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as informed by prevailing professional standards demanded of attorneys in criminal cases. Second, the defendant must show that this deficient performance prejudiced his defense. This element requires a showing of a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

Mr. Moses avers that he meets this two-part standard for had it not been for Mr. Jenkins' deficient performance, it is more likely than not that the result of the proceeding would have been different. In the case of *United States v. Johnson, 615 F.2d 1125 (5th cir. 1980)*, the Fifth U.S. Circuit Court of Appeals held that it is the duty of a court-appointed attorney to interview potential witnesses and to make an independent examination of the factual circumstances, pleadings and laws involved. Moreover, as long ago as 1949, the Fifth Circuit in *Collingsworth v. Mayo, 173 F.2d 695 (5th Cir. 1949)*, held that the assistance of counsel includes consultation and understanding of the accused's case before trial, a consideration of his special interests in cross-examination of witnesses and production of defensive evidence and in the making of argument and otherwise. It is apparent, from the facts and circumstances of the instant matter, that Mr. Jenkins did not fulfill his duty as a court-appointed attorney for he did not have a thorough understanding of Mr. Moses' case before trial, and his cross-examination of witnesses and making of argument were inept at best. This could

5

be because of the shortfalls of the Orleans Indigent Defender Program, but Mr. Moses should not be the one to suffer because of defense counsel's shortcomings, especially with two life sentences.

This would be a different matter had there not been obvious contradictions between the only two witnesses placing the defendant on the scene of the crime. This would also be a different matter had there been some physical evidence connecting Mr. Moses to the crime. But this is not the case, and with subsequent information about payments being made by a victim's mother to witnesses to place the defendant at the scene of the crime, and subsequent information discrediting and contradicting the primary witness by placing him elsewhere at the time of the shooting, the fact that one witness states she saw the other witness on the scene after the shooting, while that witness states that he ran to a friend's home upon hearing two shots fired is crucial indeed. Moreover, if Ms. Hayes is truthful about the perpetrator's back being toward her at the time of the shooting, then Mr. Stamps is lying about the perpetrator facing her home when he passed the scene. Whatever the case, Mr. Moses has been victimized by inconsistent, contradictory trial testimony of crucial State witnesses and is entitled to post-conviction relief is this matter.

Finally, Mr. Moses avers that his court-appointed attorney, Mr. Jenkins, neglected to object to the trial court's instructions to the jury, particularly, the court's reasonable doubt instruction. The trial court's reasonable doubt instruction violated *Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990),* in that prohibited portions of the *Cage* "reasonable doubt" instruction were incorporated within the instructions given by the trial court herein. In view of the holding in *Cage, supra,* and the subsequent decisions of *Sullivan v. Louisiana, 113 S.Ct. 2078 (1993), Victor v. Nebraska, 511 U.S. 1, 114 U.S. 1239 (1994),* and *Humphrey v. Cain, 138 F.2d 552 (5th Cir. 1998)(en banc),* Mr. Jenkins should have taken every precaution possible in protecting Mr. Moses jury instruction rights. This he did not do, thus further depriving petitioner of his constitutional right to effective assistance of counsel.

6

## CONCLUSION

WHEREFORE, in light of the foregoing facts and argument, petitioner prays that this Honorable Court issue an order granting him post-conviction relief by vacating and setting aside his convictions of two counts of first degree murder; or in the alternative, issue an order that an evidentiary hearing be held on the claim raised herein.

Respectfully Submitted,

X _Larry Moses_

LARRY MOSES, #339562
LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

C. GARY WAINWRIGHT
ATTORNEY AT LAW
2739 TULANE AVENUE
NEW ORLEANS, LA 70119
(504) 822-3104

7

CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

LARRY MOSES                                    CASE NO. 371-524

VERSUS

                                               SECTION "_____"

BURL CAIN, WARDEN
LOUISIANA STATE PENITENTIARY

## PETITION FOR POST-CONVICTION RELIEF (Uniform Application)

1. Name and location of court which entered the judgment of conviction challenged: **Criminal**

**District Court, Parish of Orleans**

2. Date of judgment of conviction: **October 31, 1995**

3. Length of sentence: **Life Imprisonment (2 running concurrent)**

4. Nature of offense involved: **Two Counts of First Degree Murder**

5. What was your plea:

   (a) Not guilty (X)

   (b) Guilty ( )

   © Not guilty and not guilty by reason of insanity ( )

   (d) Name and address of the lawyer representing you at your plea: **Robert Jenkins,**

**Esq., Orleans Indigent Defender Program, New Orleans, LA 70119**

   (e) Was the lawyer appointed (X) or hired ( )

6. Kind of Trials: **Jury**

7. (a) Name and address of lawyer representing you at your trial: **Robert Jenkins,**

**Orleans Indigent Defender Program, New Orleans, LA 70119**

   (b) Was the lawyer (X) or hired ( )

8. Did you testify at the trial ( )yes ( )no?

9. (a) Give the name and address of the lawyer that represented you at your sentencing:

**Robert Jenkins, Esq., Orleans Indigent Defender Program, New Orleans, LA 70119**

   (b) Was the lawyer appointed (X) or hired ( )

10. Did you appeal from the judgment of conviction?

    Yes (X) No ( )

11. If you did appeal, give the following information:

    (a) Citation, docket number, date of opinion by the Appeal Court: **State v. Larry Moses,**

No. 96-KA-0642 (10/1/97)

# EXHIBIT "5"

(b) Name and address of lawyer representing you on Appeal:

Sherry Watters, Orleans Indigent Defender Program, New Orleans, LA

70119

(C) Was the lawyer appointed(X) or hired ( )?

12. Other than a direct appeal from the judgment of conviction and sentence, have you

previously filed any application for post-conviction relief with respect to this judgment in any

state or federal court? Yes ( ) No (X)

13. If your answer to 12 is "yes", give the following information:

(a)    (1) Name of court:

(2) Nature of proceeding:

(3) Claims raised:

(4) Did you receive an evidentiary hearing on your application? Yes ( ) No ( )

(5) Was relief granted or denied?

(6) Date of disposition:

(7) Citation of opinion:

(8) Name and address of lawyer representing you:

Have you filed any other applications for post-conviction relief with respect to the challenged

conviction?  Yes ( ) No ( )

## CLAIMS FOR RELIEF

### CLAIM I

Petitioner was denied due process when evidence favorable to the defense which

affected the credibility and reliability of the State's primary witness was knowingly

suppressed by the prosecution.

(a)    FACTS: SEE Attached Memorandum.

(b) List names and addresses of witnesses who could testify in support of your

claim. If you cannot do so, explain why:

Mrs.Lenora Stamps, 3306 Press St., New Orleans, LA 70122

Dr. Frank Minyard, Coroner's Office, New Orleans, LA 70119

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a

prior application, explain why:  Up until recently, petitioner had no knowledge of the

Order for Productive Custody or the basis for the Order.

A.  Do you have in a state or federal court any petition or appeal now pending as the judgment challenged?  Yes ( ) No (X)

B.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged?  Yes ( ) No (X)

      (1) through (3) do not apply.

C.  Does not apply.

     WHEREFORE, petitioner prays that the Court grant petitioner relief to which he is entitled including an expedited hearing on this petition.

                    Respectfully submitted:

                    LARRY MOSES #339562
                    HICKORY 2/
                    LOUISIANA STATE PENITENT...
                    ANGOLA, LA 70712

                    C. GARY WAINWRIGHT
                    ATTORNEY AT LAW
                    2739 TULANE AVENUE
                    NEW ORLEANS, LA 70119
                    (504) 827-9900

LARRY MOSES                                    CRIMINAL DISTRICT COURT
                                               PARISH OF ORLEANS

VERSUS                                         CASE NO. 4371-524

BURL CAIN, WARDEN                              SECTION "D"
LOUISIANA STATE PENITENTIARY

## MEMORANDUM IN SUPPORT OF
## PETITION FOR POST-CONVICTION RELIEF

Petitioner LARRY MOSES is currently confined in the Louisiana State Penitentiary at

Angola, Louisiana, by virtue of two life sentences running concurrent imposed by the Honorable

Frank A. Marullo, Judge, Section "D", Criminal District Court, Parish of Orleans. Said

sentences were imposed after petitioner was found guilty by jury of two counts of first degree

murder. Petitioner's convictions and sentences were affirmed the Louisiana Fourth Circuit Court

of Appeal on October 1, 1997, under docket number 96-KA-0641. Petitioner recently discovered

evidence that is favorable to the defense, which destroys the credibility and reliability of the

State's primary witness against him. In light of the discovery, petitioner now seeks post-

conviction relief.

### THE FACTS

During the early morning hours of January 4, 1994, Alma Causey and Daniel Ratcliff

were murdered on a street corner in the City of New Orleans. Over five months later one

Frederick Stamps contacted the homicide office of the New Orleans Police Department (NOPD)

and informed police that Larry Moses was the murderer of both Causey and Ratcliff. On June 6,

1994, Stamps identified petitioner from a six-person photographic line-up. Petitioner was

arrested in late June and extradited from the State of Georgia. He was indicted by the Orleans

Parish Grand Jury for two counts of first degree murder and on October 31, 1995, he was found

guilty as charged. Because the jury deadlocked during the penalty phase, petitioner was

sentenced to life imprisonment on both counts with said sentences running concurrent.

Mr. Stamps claimed that moments before the victims were murdered, he passed between

petitioner and the victims, all of whom he knew, and inquired what was going on. He said that

petitioner told him to get away "or you will get some." He continued walking and when he was

about 15 to 20 feet away he heard two shoots. He said he ran to a friend's house and did not

contact police because it was not his business.

Mr. Stamps further stated that approximately two weeks after the murders he and

petitioner had an argument in which he accused petitioner of stalking him. Mr. Stamps then stated that four months later, on May 28, 1994, he and petitioner had another encounter which resulted in Stamps being pistol-whipped by petitioner. Stamps went to the hospital that day where he underwent surgery on his arm, and the following day he left the hospital against medical advice.

The appeal record discloses that Stamps contacted police after leaving the hospital and identified petitioner on June 6, 1994. However, the appeal record is void of the fact that in between the time he left the hospital, May 29, 1994, and the time he identified petitioner, June 6, 1994, Stamps' mother had him taken into protective custody because he was suffering from mental illness, showing violent behavior, and making threats against his family and others. This occurred on June 3, 1994, at 5:05 P.M. and is recorded in an *Order for Protective Custody* signed by Orleans Parish Coroner Dr. Frank Mannered. SEE *Exhibit "A"*

The State's case against petitioner was predicated on the testimony of two persons, Mr. Stamps and June Hayes. No murder weapon was found, no physical evidence was obtained connecting petitioner to the murders, and no incriminating statements were made by petitioner relative to the crime. Moreover, Ms. Hayes' testimony at trial was inconsistent, contradictory, and incredible. The testimony of Mr. Stamps was the crux of the State's case, and had the defense been made aware of his mental condition at the time he identified petitioner, it could have easily discredited him as a witness and impeach his testimony.

## CLAIM I

Petitioner was denied due process when evidence favorable to the defense which affected the credibility and reliability of the State's primary witness was knowingly suppressed by the prosecution.

## ARGUMENT

Long ago, in *Brady v. Maryland, 373 U.S. 83, 83 S.C. 1194, 10 L.ED.2d 215 (1963)*, the United States Supreme Court ruled that suppression by the prosecutor of material evidence favorable to the accused justifies a new trial irrespective of the god faith or bad faith of the prosecution. The Supreme Court in *Giglio v. United States, 405 U.S. 150, 92 S.C. 763, 31 L.ED.2d 104 (1972)*, extended the rule of Brady to cases in which evidence adversely affecting the credibility of Government witnesses is withheld from the defense. The test applied in that case was:

"When the 'reliability of a given witness may well be determinative
of guilt or innocence,' nondisclosure of evidence affecting credibility
falls within this general rule. . . . Moreover, whether the nondisclosure
was a result of negligence or design, it is the responsibility of the
prosecutor."

More recently, in relying on *Brady, supra*, the Louisiana Supreme Court in *State v.*

*Knapper, 579 So.2d 956 (La. 1991)*, succinctly stated:

"The prosecutor may not suppress evidence which is favorable to the
defendant and material of the issue of defendant's guilt or innocence.
Brady v. Maryland, 373 U.S. 83 (1963). Favorable evidence includes
both exculpatory evidence and impeachment evidence. United States
v. Bagley, 473 U.S. 667 (1985). The evidence is material if there is
a reasonable probability, sufficient to undermine confidence in the
outcome of the proceeding or create a reasonable doubt that did not
otherwise exist." *Id. at 958*.

In applying the foregoing legal principles to the instant matter, it is apparent that petitioner is

entitled to a new trial under the circumstances herein.

In turning to the facts of the instant matter, the State's case was primarily predicated on

the testimony of Frederick Stamps who identified petitioner as the perpetrator of the murders

over five (5) months after they occurred. Mr. Stamps claimed that he inquired as to what was

going on between petitioner and the victims only moments before they were murdered and that

he did not contact police that night "because it was not his business." During the five-month

period he allegedly got into two different confrontations with petitioner, the latter allegedly

resulting in Mr. Stamps being pistol whipped and hospitalized. This allegedly occurred on May

28, 1994, eight days before Mr. Stamps identified petitioner's picture from a six

photographic lineup on June 6, 1994. However, unbeknown to petitioner up until recently, only

three days before this photographic lineup, on June 3, 1994, Stamps' mother had him taken into

protective custody because he was suffering from mental illness, showing violent behavior, and

making threats against his family and others. The *Order for Protective Custody* signed by

Orleans Parish Coroner Dr. Frank Mannered., which is attached hereto and made part hereon, is

timed 5:05 p.m. of June 3, 1994. It is ironic that for a period over five months Mr. Stamps did

not identify petitioner as the perpetrator of the murderer, yet during the period of time when he

was suffering from mental illness, showing violent behavior and making threats against his

family and others, Mr. Stamps suddenly identified petitioner as the murderer of the victims in

this matter.

Petitioner avers that in light of the *Order for Protective Custody* the State is charged

with knowledge of Mr. Stamps' mental condition time when he identified petitioner. The Parish

Coroner signed the protective order and to a significant degree he is a part of the prosecutorial team. It is implausible, if not impossible, that the police and the prosecutors in this matter had no knowledge of Mr. Stamps' mental condition at the time. In light of the fact that for a period of over five months Mr. Stamps allegedly knew the identity of the murderer, yet failed to come forward with this information, the State had a duty to fully evaluate his credibility as a witness. In so doing, it had a duty to disclose to the defense all pertinent information relative to Mr. Stamps' background. Had the defense been armed with this pertinent information it could have easily discredited Mr. Stamps and impeached him as a witness. Therefore, petitioner was denied due process when the he State failed to disclose that its primary witness was suffering from mental illness at the time he identified petitioner as the murderer. The defense in this matter was entitled to this favorable and material evidence, which destroys the credibility and reliability of the State's primary witness. Without this information, petitioner was deprived of a fair and impartial trial.

## CONCLUSION

WHEREFORE, in light of the foregoing facts and argument, petitioner prays that this Honorable Court grant his petition for post-conviction relief by ordering an evidentiary hearing as set forth in Article 930 of the Louisiana Code of Criminal Procedure to address evidence is support of petitioner's claims, and after adducing this evidence vacating and setting aside petitioner's conviction and granting him a new trial.

Respectfully submitted:

LARRY MOSES #339562
HICKORY 2
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712


C. GARY WAINWRIGHT
ATTORNEY AT LAW
2739 TULANE AVENUE
NEW ORLEANS, LA 70119
(504) 827-9900

## TABLE OF CONTENTS

CONTENTS:                                                    PAGE NO.

Table of Authorities............................................................................ -ii-

Statement of Jurisdiction..................................................................... 1

Statement of the Case......................................................................... 1

Issues & Questions of Law Involved..................................................... 2

Assignment of Errors.......................................................................... 2

Argument........................................................................................... 2

Conclusion.......................................................................................... 5

Certificate of Service........................................................................... 6

**APPENDIX:**

Exhibit "A" – Copy of Order for Protective Custody

Exhibit "B" – Copy of First Application for Post-Conviction Relief

Exhibit "C" – Copy of Second Application for Post-Conviction Relief

Exhibit "D" – Copy of Minute Entry Denying Petitioner Post-Conviction Relief

Copy of Grand Jury Indictment

# EXHIBIT "6"

## TABLE OF AUTHORITIES

*Brady v. Maryland*, 373 U.S. 83, 83 S.C. 1194, 10 LED.2d 215 (1963)................ 2

*Giglio v. United States*, 405 U.S. 150, 92 S.C. 763, 31 LED.2d 104 (1972)............ 3

*State v. Knapper*, 579 So.2d 956 (La. 1991)............................................. 3

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)........... 4

*State ex rel. Medford v. Whitley*, 666 So.2d 652 (La. 1996)........................... 4

## STATEMENT OF JURISDICTION

Jurisdiction is vested in this Honorable Court by authority of Article V, Section 10, of the 1974 Louisiana Constitution.

## STATEMENT OF THE CASE

During the early morning hours of January 4, 1994, Alma Causey and Daniel Ratcliff were murdered on a street corner in the City of New Orleans. Over five months later one Frederick Stamps contacted the homicide office of the New Orleans Police Department (NOPD) and informed police that Larry Moses was the murderer of both Causey and Ratcliff. On June 6, 1994, Stamps identified petitioner from a six-person photographic line-up.

Petitioner was arrested in the State of Georgia and extradicted. He was indicted by the Orleans Parish Grand Jury for two counts of first degree murder and on October 31, 1995, he was found guilty as charged. Because the jury deadlocked during the penalty phase, petitioner was sentenced to life imprisonment on both counts with said sentences running concurrent.

Mr. Stamps claimed that moments before the victims were murdered, he passed between petitioner and the victims, all of whom he knew, and inquired what was going on. He said that petitioner told him to get away "or you will get some." He continued walking and when he was about 15 to 20 feet away he heard two shots. He said he ran to a friend's house and did not contact police because it was not his business.

Mr. Stamps further testified at trial that approximately two weeks after the murders, he and petitioner had an argument in which he accused petitioner of stalking him. Mr. Stamps then stated that four months later, on May 28, 1994, he and petitioner had another encounter which resulted in Stamps being pistol-whipped by petitioner. Stamps went to the hospital that day where he underwent surgery on his arm, and the following day he left the hospital against medical advice. Neither the "stalking" or the "pistol whipping" were reported to the police.

On June 6, 1994, Stamps contacted police and identified petitioner as being the perpetrator of the murders. However, between the time Stamps left the hospital and identified petitioner, his mother had him taken into protective custody because he was suffering from mental illness, showing violent behavior, and making threats against his family and others. This occurred on June 3, 1994, at 5:05 P.M. and is recorded in an *Order for Protective Custody* signed by Orleans Parish Coroner Dr. Frank Mannered. SEE *Exhibit "A"*.

The State's case against petitioner was predicated on the testimony of two witnesses, Mr. Stamps and June Hayes. No murder weapon was found, no physical evidence was obtained connecting petitioner to the murders, and no incriminating statements were made by petitioner relative to the crime. Moreover, Ms. Hayes' testimony at trial was inconsistent, contradictory, and incredible. She first testified that when she went in the back of the house to wake her great uncle up to tell him that Alma and Daniel were being robbed, she heard two gunshots and ran to the door and saw her friends lying on the ground and called "911". She later testified that she saw the actual shooting and although she could not identify the man who had shot her friends, she was seventy-five percent sure that the man's voice was that of petitioner.

In light of Ms. Hayes' inconsistent testimony, the testimony of Mr. Stamps was the crux of the State's case. Had the defense been made aware of his mental condition at the time he identified petitioner, it could have easily discredited him as a witness and impeach his testimony. His trial counsel did not find out until after trial about the protective order. Mr. Stamps testified at trial and was not cross-examined by the defense regarding his mental illness, the order for protective custody and the fact he had left the mental ward without authorization.

In seeking post-conviction relief, petitioner timely alleged ineffective assistance of counsel in a post-conviction application which was clocked in on January 26, 2000. SEE *Exhibit "B"*. His supplemental application filed March 22, 2002, alleged a Brady-Giglio claim on which a copy of the protective custody order was attached as an exhibit. SEE *Exhibit "C"*.

In denying petitioner post-conviction relief without conducting an evidentiary hearing, the trial court in a minute entry dated July 26, 2002, merely stated that the matter "was considered on direct appeal." SEE *Exhibit "D"*. According, petitioner now seeks relief in this Honorable Court.

## ISSUE & QUESTION OF LAW INVOLVED

1. Whether defendant was denied his right to due process of law when the court below denied him post-conviction relief on claims of ineffective assistance of counsel and suppression of favorable evidence without conducting an evidentiary hearing to resolve these claims?

## ASSIGNMENT OF ERRORS

1. The court below erred when it failed to order an evidentiary hearing to resolve petitioner's claims of ineffective assistance of counsel and suppression of favorable evidence by the prosecution.

-2-

### ARGUMENT

Long ago, in *Brady v. Maryland, 373 U.S. 83, 83 S.C. 1194, 10 LED.2d 215 (1963)*, the

United States Supreme Court ruled that suppression by the prosecutor of material evidence

favorable to the accused justifies a new trial irrespective of the god faith or bad faith of the

prosecution.  The Supreme Court in *Giglio v. United States, 405 U.S. 150, 92 S.C. 763, 31*

*LED.2d 104 (1972)*, extended the rule of Brady to cases in which evidence adversely affecting

the credibility of Government witnesses is withheld from the defense.  The test applied in that

case was:

> "When the 'reliability of a given witness may well be determinative
>
> of guilt or innocence,' nondisclosure of evidence affecting credibility
>
> falls within this general rule. . . .  Moreover, whether the nondisclosure
>
> was a result of negligence or design, it is the responsibility of the
>
> prosecutor."

More recently, in relying on *Brady, supra*, the Louisiana Supreme Court in *State v.*

*Knapper, 579 So.2d 956 (La. 1991)*, succinctly stated:

> "The prosecutor may not suppress evidence which is favorable to the
> defendant and material of the issue of defendant's guilt or innocence.
> Brady v. Maryland, 373 U.S. 83 (1963).  Favorable evidence includes
> both exculpatory evidence and impeachment evidence.  United States
> v. Bagley, 473 U.S. 667 (1985).  The evidence is material if there is
> a reasonable probability, sufficient to undermine confidence in the
> outcome of the proceeding or create a reasonable doubt that did not
> otherwise exist." *Id. at 958.*

In applying the foregoing legal principles to the instant matter, it is apparent that petitioner

is entitled to an evidentiary hearing under the circumstances herein.

In turning to the facts of the instant matter, the State's case was primarily predicated on

the testimony of a mentally ill witness, Frederick Stamps, who identified petitioner as the

perpetrator of the murders over five (5) months after they occurred.  Mr. Stamps identified

petitioner's picture from a six-person photographic lineup on June 6, 1994.  However, it was not

known  to petitioner or his trial counsel until after the rendition of the verdict that  three days

before this photographic lineup, on June 3, 1994, Stamps' mother had him taken into protective

custody because he was suffering from mental illness, showing violent behavior, and making

threats against his family and others. The  *Order for Protective Custody*  signed by Orleans

Parish Coroner Dr. Frank Mannered., which is attached hereto and made part hereon, is timed 5:05 p.m. of June 3, 1994. It is ironic that for a period over five months Mr. Stamps did not identify petitioner as the perpetrator of the murderer, yet during the period of time when he was suffering from mental illness, showing violent behavior and making threats against his family and others, Mr. Stamps suddenly identified petitioner as the murderer of the victims in this matter.

Petitioner avers that in light of the *Order for Protective Custody* the State is charged with knowledge of Mr. Stamps' mental condition time when he identified petitioner. The Parish Coroner signed the protective order and to a significant degree he is a part of the prosecutorial team. It is implausible, if not impossible, that the police and the prosecutors in this matter had no knowledge of Mr. Stamps' mental condition at the time. In light of the fact that for a period of over five months Mr. Stamps allegedly knew the identity of the murderer, yet failed to come forward with this information, the State had a duty to fully evaluate his credibility as a witness. In so doing, it had a duty to disclose to the defense all pertinent information relative to Mr. Stamps' background. Had the defense been armed with this pertinent information, it could have easily discredited Mr. Stamps and impeached him as a witness. Therefore, petitioner was denied due process when the he State failed to disclose that its primary witness was suffering from mental illness at the time he identified petitioner as the murderer. The defense in this matter was entitled to this favorable and material evidence, which destroys the credibility and reliability of the State's primary witness. Without this information, petitioner was deprived of a fair and impartial trial.

Moreover, petitioner's trial counsel, Attorney Robert Jenkins of the Orleans Indigent Defender Program, failed to thoroughly investigate the background of Mr. Stamps prior to trial, and failed to emphasize the crucial contradictions of the State's two primary witnesses during the course of trial. His representation was deficient and prejudicial to petitioner and did not satisfy the standard governing effective assistance of counsel pronounced by the United States Supreme Court in *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).*

In light of the nature and substance of petitioner's claim, the court below erred when it failed to order an evidentiary hearing on his claims. Contrary to the conclusion of the court below, the issues raised on post-conviction were not considered on direct appeal. In regard to a

-4-

Case 2:13-cv-00821-NJB   Document 1-1   Filed 04/12/13   Page 50 of 90

Brady-Giglio claim, the Louisiana Supreme Court in *State ex rel. Medford v. Whitley*,

*666 So.2d 652 (La. 1996)*, discussed the requirement for a hearing under Article 930.8 and said:

> "If relator's claim based on facts not known meets the threshold tests
> set out in Article 928 and Article 929, the district court must hold a hearing
> . . . at which it will determine (1) whether relator has proved, or the state
> concedes, that his Brady claim rests on facts not disclosed to him or his
> attorney; and (2) if so, whether the state has been prejudiced in its "ability
> to respond to, negate, or rebut the allegations of the petition . . . by events
> not under the control of the state which have transpired since the date of
> [relator's] original conviction. . . ." In this context, the withholding of
> exculpatory evidence under certain circumstances may constitute an event
> 'under the control of the state' for purposes of La.Code Crim.Proc.
> art. 930.8 B."

In sum, since petitioner's application was timely filed, petitioner is entitled to an

evidentiary hearing upon his claims.  Accordingly, petitioner is entitled to post-conviction relief.

## CONCLUSION

WHEREFORE, in light of the foregoing facts and argument, defendant prays that

this Honorable Court issue an order remanding this matter to the trial court with instructions that

an evidentiary hearing be held on the claims of ineffective assistance of counsel and suppression

of favorable evidence by the prosecution.

Respectfully Submitted,

C. GARY WAINWRIGHT
ATTORNEY AT LAW
2736 TULANE AVENUE
NEW ORLEANS, LA 70119
(504) 827-9900

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Appellate Brief have been served upon the

Honorable Frank A. Marullo, Judge, Criminal Judicial District Court, Parish of Orleans, and the

Office of the District Attorney, Parish of Orleans, via U. S. Mail, properly addressed, postage

prepaid, this _25_ day of November, 2002.

                                        C. GARY WAINWRIGHT

APPENDIX "C"— SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET
Adopted December 18, 1997, effective March 1, 1998
Amended December 16, 1998, effective February 1, 1999

SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

No. _____

TO BE COMPLETED BY COUNSEL or PRO SE LITIGANT FILING APPLICATION
TITLE

|  |  |
|---|---|
| | Applicant: LARRY MOSES DOC No.339562 |
| | Have there been any other filings in this |
| | Court in this matter? [ ] Yes [X] No |
| **LARRY MOSES** | |
| | |
| **VS.** | Are you seeking a Stay Order? [No] |
| | Priority Treatment? [ ] Yes [X] No |
| **N. BURL CAIN, Warden** | If so you MUST complete & attach a |
| | Priority Form |

### LEAD COUNSEL PRO SE LITIGANT INFORMATION

APPLICANT: Larry Moses _____
Name: Larry Moses _____
Address: DOC #339562, Pine Hall 2 _____
Angola, Louisiana 70712 _____
Phone: N/A   Bar Roll No. N/A _____

RESPONDENT: N. Burl Cain, Warden _____
Name: Hon. Eddie Jordan, District Attorney _____
Address: 619 S. White Street _____
New Orleans, Louisiana 70119 _____
Phone: (504) 822-2414   Bar Roll No. _____

Pleading being filed: [X] In Proper Person,   [X] In Forma Pauperis Attach a list of additional
counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

### TYPE OF PLEADING

[ ] Civil, [X] Criminal, [ ] Bar, [ ] Civil Juvenile, [ ] Criminal Juvenile, [ ] Other

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court: N/A _____  Docket No.N/A _____
Judge/Commissioner/Hearing Officer N/A _____  Ruling Date: N/A _____

### DISTRICT COURT INFORMATION

Parish and Judicial District Court: Parish of Orleans, Criminal District Court, No. 371-524
Judge and Section: Hon. Frank A. Marullo   Date of Ruling/Judgment: None (Filed Mandamus)

### APPELLATE COURT INFORMATION

Circuit: __Fourth__   Filing Date: _____   Docket No.2005-K-0155
Applicant in Appellate Court: Larry Moses _____
Ruling Date: __March 1, 2005__   Panel of Judges: Terri F. Love, Patrica Rivet Murray, Dennis R.
Bagneris, Sr, JJ  En Banc: [ ]

### REHEARING INFORMATION

Applicant: N/A _____   Filing Date N/A _____   Action on Rehearing: N/A _____
Ruling Date: N/A _____   Panel of Judges:  N/A _____   En Banc: [ ]

### PRESENT STATUS

[ ] Pre-Trial, Hearing/Trial Schedule Date: _____ [ ] Trial in Progress, [X] Post Trial
Is there a stay now in effect? No.  Has this pleading been filed simultaneously in any other court? No.
If so, explain briefly.

### VERIFICATION

I certify that the above information and all of the information contained in this application is true and
correct to the best of my knowledge and that all relevant pleadings and rulings, as required by
Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has
been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in
the case of a remedial writ, and to all other counsel and unrepresented parties.

March 28, 200_
DATE

_____
RE

# EXHIBIT "7"

NO._____

IN THE

SUPREME COURT OF LOUISIANA

LARRY MOSES,

*Relator/Petitioner,*

VERSUS

N. BURL CAIN, WARDEN,
Louisiana State Penitentiary,

*Respondent.*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
TO THE COURT APPEAL, FOURTH CIRCUIT, FROM MARCH 1, 2005,
DENIAL OF APPLICATION FOR WRIT OF MANDAMUS, IN NUMBER:
2005-K-0155, AND FROM UNREASONABLE AND UNNECESSARY DELAY
IN THE UNIFORM APPLICATION FOR POST-CONVICTION RELIEF,
ORLEANS PARISH CRIMINAL DISTRICT COURT, THE HONORABLE
FRANK A. MARULLO, CRIMINAL CASE NUMBER: 371-524, SECTION "D"
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


APPLICATION FOR SUPERVISORY WRITS, REMEDIAL WRITS,
WRIT OF CERTIORARI OR REVIEW

BRIEF ON BEHALF OF:

LARRY MOSES, *Relator*

Prepared By:

Henry L. Joyce, Jr.
Paralegal/Advocate
Inmate Counsel Substitute

Respectfully submitted,

*Larry Moses*

LARRY MOSES, *Pro se*
DOC. No. 339562, Pine Hall 2
Louisiana State Penitentiary
Angola, Louisiana 70712


POST-CONVICTION PROCEEDINGS

**TABLE OF CONTENTS**                                    **Page Number**

TABLE OF AUTHORITIES ................................ i, ii, iii

STATEMENT OF JURISDICTION ............................ 1

STATEMENT OF THE CASE ............................... 1

WRIT GRANT CONSIDERATIONS .......................... 3

SUPREME COURT RULE X. § 1(A)(4). ...................... 3

APPLICABLE STATUTORY AUTHORITY AND ITS PROPER ........ 7
INTERPRETATION, CONSTRUCTION AND APPLICATION

CLAIM NUMBER 1. .................................... 6

CLAIM NUMBER 2. .................................... 6

CLAIM NUMBER 3. .................................... 6

CONCLUSION. ...................................... 11

PRAYER. ........................................ 11, 12

VERIFICATION .................................... 13

EXHIBITS:

**TABLE OF AUTHORITIES**                              Page Number

**CASE LAW:**

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1914, (1963) . . . . . . . . . . . . . . . . . 1, 3, 4, 7

Indiviglio v. United States, 612 F.2d 624 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . 10

Jurek v. Estelle, 593 F.2d 672 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . 10

Kimmelman v. Morrison, 106 S.Ct. 2574, (1986) . . . . . . . . . . . . . . . . . . . . . . . 8

O'Berry v. Wainwright, 546 F.2d 1204 (5th Cir. 1977) . . . . . . . . . . . . . . . . . 10

Parton v. Wyrich, 614 F.2d 154 (8th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 10

State v. Cage, 637 So.2d 89 (La. 2/4/94) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

State v. Ford, 694 So.2d 917 (La. 5/30/97) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

State ex rel., Tassin v. Whitley, 602 So.2d 721 (La. 1992) . . . . . . . . . . . . . . . . 8

State ex rel. Cormier v. State, 680 So.2d 1168 (La. 10/4/96) . . . . . . . . . . . . . . . . 5

State ex rel., Glover v. State, 660 So.2d 1189 (La. 9/5/95) . . . . . . . . . . . . . . . . 10

State v. Lanieu, 885 So.2d 512 (La. 10/1/04) . . . . . . . . . . . . . . . . . . . . . . . . 7

Rachel v. Bordenkircher, 590 F.2d 200 (6th Cir. 1978) . . . . . . . . . . . . . . . . . . 10

Tyler v. Phelps, 622 F.2d 172 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Brown, __ F.2d __ (D.C. 1980) . . . . . . . . . . . . . . . . . . . . . . 10

Wainwright v. Sykes, 433 U.S. 72 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**CODE LAW AND STATUTORY PROVISIONS:**

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Supreme Court Rule X. § 1(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

La. C.Cr.P. Art. 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La. C.Cr.P. art. 925 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

La. C.Cr.P. Art. 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La. C.Cr.P. art. 929 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La. C.Cr.P. Art. 930.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

La. C.Cr.P. Art. 930.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

La. C.Cr.P. Art. 930.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

La. C.Cr.P. Art. 930.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

## CONSTITUTIONAL PROVISIONS:

Art. 5 § 5 of the Louisiana Constitution 1974 . . . . . . . . . . . . . . . . . . . . . . . 1

Article 5 § 16 of Louisiana Constitution of 1974, (A)(1) . . . . . . . . . . . . . . . . . . 4, 5

## SECONDARY AUTHORITIES:

Joseph, Post-Conviction Procedure, 41 La.L.Rev. 638-39 (1981) . . . . . . . . . . 8, 9, 10

J. Minos Simon, Law In The Cajun Nation, page 218 (1993) . . . . . . . . . . . . . . . . 10

The Holy Bible, Leviticus 19:15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### ISSUES AND QUESTIONS OF LAW

Was Relator Denied Due Process When Evidence Favorable to the Defense Which Affected the Credibility and Reliability of the State's Primary Witness Was Suppressed by the State?

Larry Moses Affirmatively Answers: "Yes"

### CLAIM NUMBER TWO

Was Relator Denied Effective Assistance by Trial Counsel?

Larry Moses Affirmatively Answers: "Yes"

### CLAIM NUMBER THREE

Was Relator Denied Effective Assistance of Appellate Counsel?

Larry Moses Affirmatively Answers: "Yes"

## STATEMENT OF JURISDICTION

Jurisdiction is properly vested in this Court in accordance with Art. 5 § 5 of the Louisiana Constitution 1974, and La. C.Cr.P. Art. 930.6.

## STATEMENT OF THE CASE

In the early morning hours of January 4, 1994, Alma Causey and Daniel Ratcliff were murdered on a street corner in the City of New Orleans. In June of 1994, Relator was arrested, charged and indicted by an Orleans Parish grand jury for two counts of first degree murder. After trial by jury on October 31, 1995, Relator was convicted as charged and thereafter sentenced to serve life imprisonment on both counts to run concurrent with one another.

On October 1, 1997, the Fourth Circuit Court of Appeal affirmed the conviction, and the Supreme Court of Louisiana denied certiorari. With the aid of counsel, Relator filed an application for post conviction relief in this court on January 26, 2000, well within the three year post conviction time limit. Over two years later the trial court found the petition timely and denied it concluding that the claim of "ineffective assistance of counsel" had been addressed on appeal. The trial court also concluded that Relator's *Brady*[1] claim was also considered on appeal.

Relator contends that this court's July 26, 2002 ruling denying his initial post-conviction relief was erroneous. Relator seeks reconsideration based upon the following factors: 1) the appeals court on direct appeal is not the proper court in which to present a claim of ineffective assistance of counsel and *Brady* violation. 2) Contrary to this court's earlier decision the ineffective counsel claim and *Brady* violation were not raised on direct appeal. 3) The issues of ineffective assistance of counsel and *Brady* violations are best relegated to Post-Conviction proceedings where Evidentiary Hearings can be held and the record developed. 4) This petition should

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1914, (1963)

1

be reconsidered in the interest of justice, and in consideration of Relator's "Actual Innocence."

Relator filed a second application for post-conviction relief on or about November 1, 2004. In February of 2005, Relator filed a request for a Writ of Mandamus on his application for reconsideration of post-conviction relief. On March 1, 2005, the Court of Appeal, Fourth Circuit in Number: 2005-K-0155, denied relief, reasoning that: "(1) in writ 2001-K-1914, this court denied, on the merits, relator's claim that the state withheld favorable evidence. Relief was again denied in writ 2002-K-2375; and (2) the other claims of ineffective assistance of trial and appellate counsel are untimely. La. C.Cr.P. art. 930.8." The Relator suggests that his Writ of Mandamus was improperly denied, after the trial court and the appellate court were given an ample opportunity to correct their misapprehensions of law.

## STATEMENT OF THE FACTS

The State's case against Relator was predicated on the testimony of a "mentally ill witness," Frederick Stamps, who identified Relator as the perpetrator of the murders over five months after they occurred. Stamps identified Relator's picture for a six person photographic lineup on June 6, 1994. However, it was not known to Relator or his trial counsel until after the rendition of the verdict that three days before this photographic lineup, on June 3, 1994, Stamp's mother had him placed into protective custody because he was suffering from mental illness, showing violent behavior, and making threats against his family and others.

The Order for Protective Custody signed by Orleans Parish Coroner Dr. Frank Minyard, M.D.; which is attached hereto and made a part of this writ is timed 5:05 p.m. June 3, 1994. Stamps did not for over a period of five months identify Relator as the perpetrator of the murders, yet during the period of time when he was suffering from mental illness, showing violent behavior and making threats to his family and others,

2

he suddenly identified Relator as the murderer in this case.

## WRIT GRANT CONSIDERATIONS

Relator moves this Honorable Court under Supreme Court Rule X. § 1(a)(4), to issue a writ of certiorari because of the erroneous interpretation or application of the constitution, statutory law or the jurisprudence.

The following consideration under Rule X Section 1(a) is applicable as to, why this case is appropriate for review. The court of appeal has decided, or sanctioned a lower court's decision of, a significant issue of law which has not been, but should be, resolved by this Court. The court of appeal is in error by upholding the trial courts ruling as it applies to relator's specified claims.

A thorough reading of the record, including but not limited to Moses' pleadings, rebut any presumption that factual or legal findings of the courts below are correct. The Relator suggests, that the unpardonable review in the lower courts amounted to an erroneous interpretation's or application of the Constitution or Laws of the United States and the State of Louisiana, and a radical denial of the statutory right to a fair review in the post-conviction context.

Additionally, relator requests that this Court review the entire record, the law, and memoranda presented and incorporate by reference a fuller statement of the facts by adopting *all* the pleadings and the original post-conviction claims briefed. Specifically, the appellate court has erroneously interpreted or applied the law of this state, and that decision will cause a material injustice, if allowed to stand.

## SUMMARY DISCUSSION

On October 1, 1997, Relator's appeal was concluded when his conviction and sentence were affirmed by the Court of Appeal, Fourth Circuit in No. 96-KA-0641. Relator then filed his first application for post-conviction relief, raising the same *Brady* claim that was improperly raised by his appellate counsel on appeal. We describe this

as improper because the newly discovered information concerning the mentally ill witness, Frederick Stamps, was *not* presented to the district court, as would be the proper procedure. Instead, counsel presented the new facts in a supplemental brief to the Court of Appeal, Fourth Circuit.

The argument here is quite simple. And this is why: The record does not support a proper application of **La. C.Cr.P. art. 930.4**, nor **La. C.Cr.P. art. 930.8**. In truth and fact, both inferior courts missed the crucial issues by two country miles. To see just how this travesty of justice developed, we need to get specific:

Article 5 § 16 of Louisiana Constitution of 1974, (A)(1) **Original Jurisdiction.** " It shall have exclusive original jurisdiction of all civil and criminal matters." In other words, for *Brady* material, or any other claim, to be properly considered by the Louisiana court system, the court of original jurisdiction must assess the claim first. Moses' appellate counsel improperly presented his newly discovered evidence claim, when she tendered a supplemental brief to the appellate court instead of complaining of the withholding in the district court. The district court's ruling that Moses' first post-conviction *Brady* claim is repetitive is absurd and compounds the error. The appeals court never had any jurisdiction whatever to settle the suppression issue on appeal. All in all, any previous considerations of Moses' *Brady* claim by them is a sham and offensive, as a matter of law. So too, the district judge's order, claiming the repetitive writ's theory is flat out appalling, when envisioning the applicable statutory provisions, under La. C.Cr.P. art. 930.4. *See, infra.*

In *State v. Ford*, 694 So.2d 917 (La. 5/30/97), the trial court apparently reconsidered an untimely and repetitive petition for post-conviction relief on which it had earlier ruled. The Supreme Court also rejected the relator's claims. The Supreme Court held that the trial court could not avoid procedural bars of La. C.Cr.P. articles 930.4 and La. C.Cr.P. articles 930.8 by "reconsidering" an application for post-

conviction relief, which the Supreme Court had considered and rejected. La. C.Cr.P. articles 930.6. The Supreme Court also considered in that equation, "Ford's claims otherwise lacked merit."

However, in *State v. Cage*, 637 So.2d 89 (La. 2/4/94), the Supreme Court reasoned antithetically from *Ford*, in the exercise of its plenary, supervisory authority over lower courts where the defendant applied to the Court for an out-of-time rehearing to reconsider the merits of its last decision. This Court remanded the case with instructions noting, that Louisiana law governing post conviction relief, La. C.Cr.P. art. 924 *et seq.*, tempers this rule of finality by providing a forum in which prisoners in state custody may attack their final convictions on constitutional grounds. When required to do so in the "interest of justice," the district court may consider a claim for post-conviction relief although it was "fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence . . . . " This Court further noted that: The Official Revision Comment to this article observes that "[t]he trial court has the discretion to make allowances for the unique case in which justice requires that the same ground be relitigated." *Id.*

Finally, the Court concluded, the determination of whether the interest of justice require relitigating any question resolved on direct appeal of a criminal conviction and sentence lies, however, in the first instance with the district courts of this state, which possess exclusive original jurisdiction over "all . . . criminal matters." La. Const. 1974, Art. 5, § 16(A); La. C.Cr.P. art. 925. *Id.*

Nonetheless, the case of *Ford* is distinguishable from Moses' where he falls within the new facts exception under La. C.Cr.P. article 930.8. Equally significant, ths case is meritorious, where *Ford* was not. To be sure, justice requires that Larry Moses be granted an evidentiary hearing in this matter. *State ex rel. Cormier v. State*, 680 So.2d 1168 (La. 10/4/96).

The Relator's post-conviction claims read as follows:

## CLAIM NUMBER ONE

**Relator Was Denied Due Process When Evidence Favorable to the Defense Which Affected the Credibility and Reliability of the State's Primary Witness Was Suppressed by the State.**

On claim number one, Relator adopts his previous argument as sufficient.

## CLAIM NUMBER TWO

**Relator Had Ineffective Assistance of Trial Counsel**

On claim number two, Relator adopts his previous argument as sufficient.

## CLAIM NUMBER THREE

**Relator Had Ineffective Assistance of Appellate Counsel**

On claim number three, Relator adopts his previous argument as sufficient.

## SUPPLEMENTAL DISCUSSION

For the purposes of accuracy, brevity and clarity we will discuss these claims undividedly. Therefore, the Relator adopts his previous arguments as sufficient, rearguing his three post-conviction claims without soliciting any additional facts.

*Cause and Prejudice*

As a starting proposition, it seems the courts cannot or have not devised fair procedural or substantive rules to prevent the more subtle and often unconscious forms of narrow-mindedness from creeping into the system. Of course, such does not justify the wholesale abandonment of Professor Joseph's treatises, *infra*. Here, the courts have plainly misapprehended the time limitation period. For example, Moses' *Brady* claim violated his due process rights where Frederick Stamps' testimony was in evidence, but his mental illness and violent disposition was not known to Moses or his trial attorney. Notwithstanding that salient factor, Moses did not discover that the State had suppressed crucial impeachment evidence until *after* his trial. Consequently, he presents an *excusable* successive post-conviction application, alleging ". . . facts

6

upon which the claim is predicated were not known to the petitioner or his attorney." La. C.Cr.P. art. 930.8(A)(1). *State v. Lanieu*, 885 So.2d 512 (La. 10/1/04). On the other hand, "even if exculpatory material was at sometime 'knowable,' an application based on it may still qualify under the new facts exception to the time bar, subject to the opportunity provided the state by art. 938.8(B) to show prejudice arising from the delay." *Carlin v. Cain*, 706 So.2d 968 (La. 1998).

Larry Moses maintains that he has a constitutional right to present relevant Louisiana statutory and constitutional law whether the trial court, the state or the appellate court found it believable, credible or offensive. Had Moses been allowed to present his chosen collateral offensive, the courts may have denied him anyway. But, of course, we will never know. Nevertheless, to understand thoroughly how this injustice occurred, let us examine Louisiana's:

### APPLICABLE STATUTORY AUTHORITY AND ITS PROPER INTERPRETATION, CONSTRUCTION AND APPLICATION

Larry Moses sought relief in the district court, pursuant to the Louisiana Code of Criminal Procedure Article 924, *et seq.*, which creates the Louisiana correlate to the Great Writ of Habeas Corpus embodied in our United States Constitution and codified by 28 U.S.C. § 2254. Article 926 governs the minimum standard of fact pleading in the post conviction relief context. Article 930.4 deals with procedural defaults that may bar raising the claim in post-conviction proceedings. In the case *sub judice*, Article 930.4 was wholly misapplied.

Where, although Larry Moses' claims were improperly presented by counsel earlier, he may relitigate, in the interest of justice. Moses' record is replete with his appellate counsel's failure to raise his *Brady* claim properly. No doubt the Court of Appeal, Fourth Circuit, rendered its opinion without any constitutional authority whatever. Moreover, post-conviction counsel failed to raise substantial errors made

7

by the appellate court and appellate counsel. In fact, he failed to press that his client's cause should be considered under Louisiana legislation concerning "excusable failure or in the interest of justice."

For example, Professor Joseph notes:

> Obviously, the court must assess fairness considerations to the state and the petitioner in deciding whether to allow the petitioner to relitigate or raise his claim.

> If the claim was previously considered on appeal (or in a prior application), the court should give the petitioner an opportunity to show why relitigation is appropriate because (1) the ground may be considered in the interest of justice, and (2) the ground must have been litigated fully. The court must consider such factors as the competency of defense counsel and subsequent jurisprudential developments.

Joseph, *Post-Conviction Procedure*, 41 La.L.Rev. 638-39 (1981).

In *State ex rel., Tassin v. Whitley*, 602 So.2d 721 (La.1992), the Supreme Court held that, "[s]ince the search for truth is the district court's paramount concern, *all* reliable evidence tending to establish the relevant facts should be considered." In other words, the true aim of the evidentiary hearing is to discern what is veracious, therefore, it follows that to limit the ambit of this "paramount" goal would be completely inimical to persons charged with criminal offenses and in contravention of the ultimate goal of discovering and, sometimes, uncovering the truth. Equally important is the general rule, post conviction relief is predicated upon expanding the remedies when asserting a constitutional deprivation, (*e.g.*, deprivation of the right to effective assistance of counsel).

The United States Supreme Court in *Kimmelman v. Morrison*, 106 S.Ct. 2574, (1986), emphasized that counsel's shortcomings were resultant of "ignorance as opposed to a strategic decision." So, for readily apparent reasons in this case, neither the state nor the court can profess they made reasonable strategic choices, when it appears on the face of the record that the trial, appellate and post-conviction attorneys

8

made no strategic decisions at all, illustrating their lack of understanding of Louisiana's procedural law. Conceivably a more reasonable explanation is that the appellate and post-conviction counsels did not present the available evidence, or their arguments were not decisions related to strategic choices, but rather was a lack of decision resultant of inadequate preparation or plainly not knowing the law. For example, appellate counsel knew or should have known that any new material facts discovered, after trial *must* be raised for the first time in the district court. Post-conviction counsel knew or should have known that appellate counsel was ineffective for not having done so.   Additionally, when the district court Judge, Frank A. Murullo, Jr., denied Moses' application, his attorney knew or should have known that he must apply for supervisory writs within thirty days or at least request an extended date for filing. *See*, The Rules of Court. The truth is that lawyers must know the law within the jurisdiction that they practice.

On the other hand, Moses asserts that, if Judge Marullo or the appellate court had allowed him a full and fair opportunity to an expanded record, he would have satisfactorily explained any procedural default. More troubling, and significant to the outcome, is that neither Judge Marullo nor the appellate court justices could credibly have resolved any factual dispute — without first ordering the State to answer or allowing Larry Moses to explain fully, why he failed to raise his claims properly in his appeal or initial or second application for post-conviction relief by means of an evidentiary hearing.

As Professor Joseph explained, "[t]he concept of an inexcusable procedural default obviously will have to be developed by the jurisprudence. Federal courts have employed the cause and prejudice test of *Wainwright v. Sykes*," Joseph, *Post-*

*Conviction Procedure*, at 639, *also citing.*[2]  In the case at bar, however, the inferior courts have wholly ignored the cause and prejudice test.  Notwithstanding, this Court has judiciously determined: "[o]ne of the goals of Louisiana's court system of justice is to provide both the accused and the state with fair and prompt appeals, and further proceedings to correct error." *State ex rel., Glover v. State*, 660 So.2d 1189 (La. 9/5/95).

Despite this Court's binding resolution, the Orleans Parish Criminal District Court and the Court of Appeal, Fourth Circuit, both flatly refused Larry Moses the opportunity to explain why he failed properly to present his claims on appeal or in the post-conviction context or both.  Although the constitutional requirements of consistency and fairness have long been reconcilable — it is clear these tribunals are not prepared to answer Moses' challenges of fact and law.  Of course, such judicial mistakes are manifestly wrong.  Just laws wrongly applied are more tyrannical in nature than the adoption of no laws or the adoption of unjust laws.  Where just laws are wrongly applied, the victim cannot tailor his conduct to avoid punishment.  On the other hand, he can tailor his conduct to avoid the application of unjust laws justly applied.  Thus, there is no greater wrong, greater weakness, or greater cruelty than the unjust application of just laws.  J. Minos Simon, *Law In The Cajun Nation*, at 218 (1993).

Ultimately, "You must not be guilty of unjust verdicts.  You must neither be partial to the little man nor overawed by the great; you must pass judgment on your neighbor according to justice." The Holy Bible, *Leviticus* 19:15.

The Supreme Court of Louisiana does *not* tolerate substantial constitutional

---

[2]    433 U.S. 72 (1977).  See *United States v. Brown*, __ F.2d __ (D.C. 1980); *Tyler v. Phelps*, 622 F.2d 172 (5th Cir. 1980); Parton v. Wyrich, 614 F.2d 154 (8th Cir. 1980); *Indiviglio v. United States*, 612 F.2d 624 (2d Cir. 1979); *Jurek v. Estelle*, 593 F.2d 672 (5th Cir. 1980); *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978); *O'Berry v. Wainwright*, 546 F.2d 1204 (5th Cir. 1977).

violations of its citizens' rights.

## CONCLUSION

Larry Moses did not receive a fair trial as demanded by our state and federal Constitutions and the applicable statutes for all the reasons stated, *inter alia*.

Larry Moses has stated the grounds, requiring relief under La. C.Cr.P. art. 930.3, specifying with reasonable particularity, the factual basis for such relief. Accordingly, the Court should deem the Relator's successive or repetitive claims as excusable, or alternatively, grant him relief in the interest of justice and an evidentiary hearing. Not to do so, would allow a travesty of justice to stand.

For the reasons stated above, this Honorable Supreme Court of Louisiana should remand this case to the district court for a proper determination of justice. *See*, *Cage*, *supra*.

## PRAYER

**WHEREFORE, YOUR RELATOR, LARRY MOSES, PRAYS THAT:** This application and all pleadings relevant to this affair be deemed good and sufficient, thereby granting this writ application in the interest of justice; that supervisory writs, certiorari or (review) issue, directed to the Honorable Frank Marullo, Judge, Orleans Parish Criminal District Court, Case No. 371-524, and to Honorable Kimberly Williamson Butler, Orleans Parish Criminal Clerk of Court, directing them to transmit to this Honorable Court on or before a day appointed, the "entire record" in these proceedings in order that the proceedings herein may be inquired into by this Court and their validity ascertained and determined. In the event such writs or any of them are granted, upon hearing such writ or writs be made peremptory and judgment be rendered in favor of Relator, Larry Moses, reversing the judgment of the district court herein, which consisted of an order denying his ineffective counsel claims on application for post-conviction relief (without holding an evidentiary hearing) and the

Court of Appeals opinion sanctioning the district court's ruling, contrary to our law..

**THE RELATOR FURTHER PRAYS THAT,** this Court render such judgment or issue such orders to which Larry Moses is entitled in the premise, including but not limited to, any other needful writs, orders and decrees and such additional relief to which he may be entitled to under the law and jurisprudence of this, the State of Louisiana.

In Faith Whereof, I Set Forth My Hand this _28_ day of March 2005.

Respectfully submitted,

_Larry Moses_

Larry Moses, Pro se
DOC. No. 339562, Pine Hall 2
Louisiana State Penitentiary
Angola, Louisiana 70712

12

## VERIFICATION

**STATE OF LOUISIANA**

**WEST FELICIANA PARISH**

Petitioner/Relator personally came and appeared,

### LARRY MOSES

who having been first duly sworn, deposed and states:

1.   I, Larry Moses, do, with this, verify and affirm according to law that I have read the foregoing and state the allegations contained therein are true and correct to the best of my knowledge, understanding and belief;

2.   I am the relator in these proceedings and solely responsible for its contents and verify that I have served a true copy of this motion and memorandum upon Hon. Frank A. Murullo, Jr., Judge, Orleans Parish Criminal District Court, Division D, Criminal Courts Building, 2700 Tulane Avenue, New Orleans, Louisiana 70119, and upon Hon. Eddie Jordan, Esq., District Attorney for Orleans Parish, 619 S. White Street, New Orleans, Louisiana 70119,  by hand delivering the properly addressed documents to an authorized prison *ex officio* for mailing first-class, postage, prepaid via the United States Postal Service, on the date indicated below;

3.   All of the documents attached hereto, filed and served herewith, are true and correct copies of the original documents filed in the record.

**FURTHER RELATOR SAYETH NAUGHT** this _28_ day of March 2005.

_Larry Moses_
Larry Moses (Affiant)

**IN WITNESS WHEREOF:**

This _28_ day of March 2005

_Henry L. Joyce, Jr._                    _Michael Murray_
Henry L. Joyce, Jr.                       Michael Murray

13

# The Supreme Court of the State of Louisiana

STATE EX REL. LARRY MOSES

VS.                                            NO.   2005-KH-1194

STATE OF LOUISIANA

- - - - - -

IN RE:  Moses, Larry; - Plaintiff; Applying for Supervisory and/or
Remedial Writs, Parish of Orleans,  Criminal District Court Div. D,
Nos. 371-524; to the Court of Appeal, Fourth Circuit, No. 2005-K-0155

- - - - - -

February 3, 2006

Denied.  Untimely and repetitive.  Cf.  La.C.Cr.P. art.
930.4(A); art. 930.4(D).

                                     JTK

                                     PFC

                                     BJJ

                                     JPV

                                     CDT

                                     JLW

Supreme Court of Louisiana
February 3, 2006

*Katherine A. Fontan*

Deputy     Clerk of Court
           For the Court

# EXHIBIT "8"

IN THE

# SUPREME COURT
## STATE OF LOUISIANA

NO. _____ **03 KP 0153**

### CRIMINAL WRIT APPLICATION

### STATE OF LOUISIANA

#### VERSUS

#### LARRY MOSES

Application for *Writ of Certiorari* and/or Review
to the Louisiana Fourth Circuit Court of Appeal, No. 2002-K-2375,
and the Hon. Frank Marullo, Judge, Section "D", Criminal District Court,
Parish of Orleans, Case No. 371-524

SUBMITTED BY:

C. GARY WAINWRIGHT, #19858
ATTORNEY AT LAW
2739 TULANE AVENUE
NEW ORLEANS, LA 70119
(504) 827-9900

# EXHIBIT "9"

IN THE

# SUPREME COURT

## STATE OF LOUISIANA

NO._____

### CRIMINAL WRIT APPLICATION

STATE OF LOUISIANA

VERSUS

LARRY MOSES

Application for *Writ of Certiorari* and/or Review
to the Louisiana Fourth Circuit Court of Appeal, No. 2002-K-2375,
and the Hon. Frank Marullo, Judge, Section "D", Criminal District Court,
Parish of Orleans, Case No. 371-524

SUBMITTED BY:

C. GARY WAINWRIGHT, #19858
ATTORNEY AT LAW
2739 TULANE AVENUE
NEW ORLEANS, LA 70119
(504) 827-9900

## TABLE OF CONTENTS

### CONTENTS:   PAGE NO.

Table of Authorities...................................................................................................-ii-

Statement of Writ Grant Considerations......................................................... 1

Statement of the Case........................................................................................ 4

Issue & Question of Law Involved.................................................................... 7

Assignment of Error........................................................................................... 7

Argument............................................................................................................. 7

Conclusion........................................................................................................... 9

Prayer................................................................................................................... 10

## EXHIBITS:

Exhibit 1 – Opinion of the Louisiana Fourth Circuit Court of Appeal

Exhibit 2 – Writ Application to the Louisiana Fourth Circuit Court of Appeal

> 2A – Copy of Order for Protective Custody
>
> 2B – Copy of First Application for Post-Conviction Relief
>
> 2C – Copy of Supplemental Application for Post-Conviction Relief
>
> 2D – Copy of Minute Entry Denying Petitioner Post-Conviction Relief
>
> 2E – Copy of Grand Jury Indictment

Exhibit 3 –Fourth Circuit Opinion upon Mr. Moses' Direct Appeal

## TABLE OF AUTHORITIES

State v. Watson, No. 00-K-1580 (La. 05/14/2002)..................................................1

State v. Prudholm, 446 So.2d 729 (La. 1984).......................................................1

State v. Truitt, 500 So.2d 355, 359 (La. 1987).....................................................1

State v. Barnes, 365 So.2d 1282, 1285 (La. 1978)................................................1

State v. Holmes , 607 So. 2d 956, (La. App. 4 Cir., 1992).....................................1

State v. Bienemy, 483 So.2d 1105 (La.App. Th Cir. 1986)....................................1

State v. Hunter , 614 So. 2d 332, (La. App. 4 Cir. 1993)......................................1

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 LED.2d 215 (1963)...............6

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 LED.2d 104 (1972)..........6

State v. Knapper, 579 So.2d 956 (La. 1991).......................................................6

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...............8

State ex rel. Medford v. Whitley, 666 So.2d 652 (La. 1996)..................................8

*May It Please The Court:*

Applicant, Larry Moses, herein, respectfully requests that this Honorable Court exercise its discretionary authority and grant this application for *writ of certiorari and/or review*. Mr. Moses hereby sets forth the Writ Grant Considerations applicable to the instant matter[1].

## STATEMENT OF WRIT GRANT CONSIDERATIONS

1.     **Conflicting Decisions.**

A grant of writs is proper because the decision in this matter by the Fourth Circuit and the trial court are in direct conflict with the decisions of this court, decisions within the Fourth Circuit and other circuits upon the same legal issue.

The decision of the Fourth Circuit Court of Appeals in this matter is in direct conflict with the opinions of this Court, it's own opinions and the opinions of every circuit of our state with respect to the propriety of adjudicating *ineffective assistance of counsel* and *suppressed exculpatory evidence* claims on direct appeal. SEE: Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Watson, No. 00-K-1580 (La. 05/14/2002) ; State v. Prudholm, 446 So.2d 729 (La. 1984); State v. Truitt, 500 So.2d 355, 359 (La. 1987). This Court has more often than not declined to consider ineffective assistance of counsel claims on appeal because the record in such cases *is usually insufficient* to assess such a claim. Id.; State v. Barnes, 365 So.2d 1282, 1285 (La. 1978); State v. Hunter , 614 So. 2d 332, (La. App. 4 Cir. 2/11/93); State v.  Holmes , 607 So. 2d 956, (La. App. 4 Cir., 1992); State v. Bienemy, 483 So.2d 1105 (La.App. Th Cir. 1986).  Examining ineffective assistance of counsel claims after a conviction has been affirmed on appeal "enables the district Judge in a proper case to order a full evidentiary hearing." State v. Barnes, supra, at 1285.; Opinion of the Fourth Circuit, *Exhibit "1"*.  The Fourth Circuit Court of Appeal should have granted Mr. Moses' application for supervisory writs. SEE: **Writ Application to fourth Circuit,** *Exhibit "2"*.

In ratifying the denial by the trial court  of Mr. Moses' *request for an evidentiary hearing upon his post conviction relief application*, the Fourth Circuit agreed with the trial court's citing

---

[1]
Rule X(4)(2) of the Supreme Court Rules requires a review of the writ grant considerations contained in Section 1(a) of that rule.

of the Fourth Circuit's opinion in Mr. Moses original direct appeal, for the proposition that Mr. Moses had failed, *upon the record in his direct appeal,* to demonstrate the ineffectiveness of his trial counsel and that there was no suppressed material which the State was charged with knowledge of or for which the prosecutors were responsible. That there was insufficient evidence to adjudicate the alleged ineffective assistance of counsel claim raised in the direct appeal, is not a sufficient legal justification for denying applicant an opportunity to develop the factual record in post conviction, as to how his lawyer learned *after trial, before sentencing* of the commitment of the state's star witness to a mental hospital and how his trial attorney did not discover this before trial. The defendant/applicant should be allowed to inquire of the law enforcement officers and prosecutors involved in this matter regarding their knowledge of the star witness's "escape status" from the mental hospital. These are not the type of claims that should be lightly dismissed or dismissed upon the face of the pleadings, certainly they were not fully adjudicated upon direct appeal.

The long established law of this circuit and the precedents of the Louisiana Supreme Court establish that ineffective assistance claims are best relegated to Post Conviction proceedings. Furthermore, the failure of trial counsel to object to the admission of *other crimes evidence* and move for a mistrial or other admonition was not raised in direct appeal and therefore the trial court judge and the Fourth Circuit were in error in ruling that these claims were precluded from consideration in Mr. Moses post conviction relief application[2].

These propositions are not in accord with the most recent pronouncements by the Supreme Court establishing and requiring ineffective assistance and suppression of exculpatory evidence claims to be addressed in post conviction proceedings.

2.    **Significant Unresolved Issues of Law.**

The Louisiana Supreme Court and the Fourth Circuit Court of Appeals have decided the issues contained herein in a consistent manner for decades. The trial court and the Fourth Circuit Court of Appeals failed to discharge their responsibility to apply the Constitution, the statutory law and the jurisprudential law to matters lawfully before them.

---

[2]
Mr. Moses' trial counsel objected: "HEARSAY" to one instance of *other crimes evidence* and did not object to a second distinct and different crime being placed before the jury at all. Mr. Moses' appellate counsel failed to brief the objected to admission or raise these issues and arguably Mr. Moses suffered *ineffective assistance of appellate counsel* and is entitled to the granting of an out of time appeal to present these unbriefed issues to the appellate courts.

The panel rendered "no decision," citing the trial court's citing of the Fourth Circuit's opinion denying Mr. Moses' ineffective assistance of counsel claim asserted in his direct appeal for the denial of all grounds asserted in his post conviction application. These actions constructively deny a citizen of our State his constitutionally mandated and guaranteed access to the trial courts for timely filed *habeas corpus relief* applications.

The trial court and Fourth Circuit Court of Appeals are constrained by the decisions of the Louisiana Supreme Court to address applicant's state constitutional claims asserted in his timely filed post conviction relief application/habeas corpus proceedings.

3.    **Overruling or Modification of Controlling Precedents.**

The action of the Fourth Circuit Court of Appeals clearly ignores the law applicable to this matter. However, the opinion did not "overrule or modify" any precedents, it merely ignored the current law and the actual evidentiary submissions made to the trial court and to the Fourth Circuit.

4.    **Erroneous Interpretation or Application of Constitution or Law.**

As articulated above, the "ruling" of the Fourth Circuit Court of Appeals affirms the trial court's denial of an evidentiary hearing upon Mr. Moses' ineffective assistance of counsel and well founded suppression of favorable evidence claims. The Fourth Circuit's reliance upon the trial court's ruling that these claims were "adjudicated on direct appeal" is a misapplication and over generalization of what was the nature of the evidence presented within the direct appeal regarding these claims.

The ruling of the Fourth Circuit Court of Appeals has caused a material injustice and said ruling significantly affects the public interest in legitimate law enforcement efforts. The Fourth Circuit has basically said "it is okay for a citizen to be sentenced to prison based upon the testimony of an escaped mental patient and it is okay for the state to hide this information from the citizen on trial and his attorney."

The ruling from the Fourth Circuit establishes a circular reasoning that strips citizens of meaningful post conviction relief. You can not get a suppressed evidence, ineffective assistance claim fully considered in your direct appeal; however, if you raise such a claim in your direct appeal and your conviction is affirmed, the trial court may deny your post conviction petition on the basis of your having raised these issues in your direct appeal and the appellate court will

affirm such a ruling.

This diminishes respect for the rule of law and endangers the liberty of every citizen within the jurisdiction of the Fourth Circuit Court of Appeals.

### 5.    Gross Departure From Proper Judicial Proceedings.

There has been a departure from proper judicial proceedings in this matter by the trial court and the Fourth Circuit Court of Appeals as both courts have abandoned their responsibility to actively and fully defend citizen's constitutional right to habeas corpus relief.

In this matter, the trial court and Fourth Circuit Court of Appeals were well aware of the jurisprudence and statutory law concerning adjudication of ineffective assistance of counsel and suppressed exculpatory evidence claims and the need for evidentiary hearings to establish such claims. Furthermore, trial counsel's ineffective failure to object to the admission of *other crimes evidence* was not raised in petitioner's direct appeal. The trial transcript clearly establishes that trial counsel objected HEARSAY to *other crimes evidence* and failed to move for a mistrial or curative instruction. Mr. Moses's appellate brief failed to raise these trial errors.

The Fourth Circuit Court of Appeals abused its discretion in not reviewing the facts contained in the evidentiary record submitted to the trial court and to itself and in not applying the correct legal standards to the facts.

### PROCEDURAL HISTORY OF CASE

Mr. Moses conviction was affirmed on October 1, 1997 and his post conviction relief application was filed on January 26, 2000, well within the three year time period applicable to his case. The application languished on the docket until July 26, 2002. When the matter was called on that date the trial court deemed the application "timely" and denied the application and Mr. Moses' request for an evidentiary hearing upon the grounds that the "ineffectiveness of counsel had been addressed upon direct appeal." Mr. Moses informed the trial court of his intention to seek review by the Fourth Circuit Court of Appeals and filed a Notice of Intent to Seek Appeal. Subsequently, counsel determined that a Writ was the proper vehicle to utilize and on October 24, 2002, the trial court set a return date of November 25, 2002. Mr. Moses filed on November 25, 2002 with the Fourth Circuit. On December 13, 2002, the Fourth Circuit affirmed the trial court stating "Relator's application for supervisory review is untimely pursuant to Rule 4-3,....Additionally , the application is repetitive." This was Mr. Moses' first writ to the Fourth

-4-

Circuit subsequent to the denial of his post conviction application.   This Writ is filed within thirty days of the ruling by the Fourth Circuit.

## STATEMENT OF THE CASE

During the early morning hours of January 4, 1994, Alma Causey and Daniel Ratcliff were murdered on a street corner in the City of New Orleans.  Over five months later one Frederick Stamps contacted the homicide office of the New Orleans Police Department (NOPD) and informed police that Larry Moses was the murderer of both Causey and Ratcliff.  On June 6, 1994, Stamps identified petitioner from a six-person photographic line-up.

Petitioner was arrested in the State of Georgia and extradited.  He was indicted by the Orleans Parish Grand Jury for two counts of first degree murder and on October 31, 1995, he was found guilty as charged.  Because the jury deadlocked during the penalty phase, petitioner was sentenced to life imprisonment on both counts with said sentences running concurrent.

Mr. Stamps claimed that moments before the victims were murdered, he passed between petitioner and the victims, all of whom he knew, and inquired what was going on.  He said that petitioner told him to get away "or you will get some."  He continued walking and when he was about 15 to 20 feet away he heard two shots.  He said he ran to a friend's house and did not contact police because it was not his business.

Mr. Stamps further testified at trial that approximately two weeks after the murders, he and petitioner had an argument in which he accused petitioner of stalking him.  Mr. Stamps then stated that four months later, on May 28, 1994, he and petitioner had another encounter which resulted in Stamps being pistol-whipped by petitioner.  Stamps went to the hospital that day where he underwent surgery on his arm, and the following day he left the hospital against medical advice.  Neither the "stalking" or the "pistol whipping" were reported to the police.  Trail counsel failed to object and move for a mistrial when these two incidents/crimes were introduced before the jury.  In fact Mr. Jenkins merely proffered an ill founded **"HEARSAY"** objection while Mr. Stamps was introducing the "pistol whipping" story.

On June 6, 1994, Stamps contacted police and identified petitioner as being the perpetrator of the murders.  However, between the time Stamps left the hospital and identified petitioner, his mother had him taken into protective custody because he was suffering from

-5-

mental illness, showing violent behavior, and making threats against his family and others. This occurred on June 3, 1994, at 5:05 P.M. and is recorded in an *Order for Protective Custody* signed by Orleans Parish Coroner Dr. Frank Mannered. SEE *Exhibit "24"*.

The State's case against petitioner was predicated on the testimony of two witnesses, Mr. Stamps and June Hayes. No murder weapon was found, no physical evidence was obtained connecting petitioner to the murders, and no incriminating statements were made by petitioner relative to the crime. Moreover, Ms. Hayes' testimony at trial was inconsistent, contradictory, and incredible. She first testified that when she went in the back of the house to wake her great uncle up to tell him that Alma and Daniel were being robbed, she heard two gunshots and ran to the door and saw her friends lying on the ground and called "911". She later testified that she saw the actual shooting and although she could not identify the man who had shot her friends, she was seventy-five percent sure that *the man's voice* was that of petitioner.

In light of Ms. Hayes' inconsistent testimony, the testimony of Mr. Stamps was the crux of the State's case. Had the defense been made aware of his mental condition at the time he identified petitioner, it could have easily discredited him as a witness and impeached his testimony.
His trial counsel did not find out *until after trial* about the protective order. Mr. Stamps testified at trial and was not cross-examined by the defense regarding his mental illness, the order for protective custody and the fact he had left the mental ward without authorization. SEE *Exhibit "2"*.

In seeking post-conviction relief, petitioner timely alleged ineffective assistance of counsel in a post-conviction application which was clocked in on January 26, 2000. SEE *Exhibit "2B"*. His supplemental application filed March 22, 2002, alleged a Brady-Giglio claim on which a copy of the protective custody order was attached as an exhibit. SEE *Exhibit "2C"*.

In denying petitioner post-conviction relief without conducting an evidentiary hearing, the trial court in a minute entry dated July 26, 2002, merely stated that the matter "was considered on direct appeal[3]." SEE *Exhibit "2D"*. According, petitioner now seeks relief in this Honorable Court.

---

[3]
*St. v. Moses*, No. 96-KA-0641, Fourth Circuit Appeal, Not Designated for Publication, Exhibit 3.

## ISSUE & QUESTION OF LAW INVOLVED

1.   Whether defendant was denied his right to *due process of law* when the courts below denied him post-conviction relief on claims of ineffective assistance of counsel and suppression of favorable evidence <u>without conducting an evidentiary hearing</u> to resolve these claims?

## ASSIGNMENT OF ERROR

1.   The courts below erred when it failed to order an evidentiary hearing to resolve petitioner's claims of ineffective assistance of counsel and suppression of favorable evidence by the prosecution.

## ARGUMENT

Long ago, in *Brady v. Maryland, 373 U.S. 83, 83 S.C. 1194, 10 LED.2d 215 (1963)*, the United States Supreme Court ruled that suppression by the prosecutor of material evidence favorable to the accused justifies a new trial irrespective of the god faith or bad faith of the prosecution.  The Supreme Court in *Giglio v. United States, 405 U.S. 150, 92 S.C. 763, 31 LED.2d 104 (1972)*, extended the rule of Brady to cases in which evidence adversely affecting the credibility of Government witnesses is withheld from the defense.  The test applied in that case was:

> "When the 'reliability of a given witness may well be determinative
> of guilt or innocence,' nondisclosure of evidence affecting credibility
> falls within this general rule. . . .  Moreover, whether the nondisclosure
> was a result of negligence or design, it is the responsibility of the
> prosecutor."

More recently, in relying on *Brady, supra*, the Louisiana Supreme Court in *State v. Knapper, 579 So.2d 956 (La. 1991)*, succinctly stated:

> "The prosecutor may not suppress evidence which is favorable to the
> defendant and material of the issue of defendant's guilt or innocence.
> Brady v. Maryland, 373 U.S. 83 (1963).  Favorable evidence includes
> both exculpatory evidence and impeachment evidence.  United States
> v. Bagley, 473 U.S. 667 (1985).  The evidence is material if there is
> a reasonable probability, sufficient to undermine confidence in the
> outcome of the proceeding or create a reasonable doubt that did not
> otherwise exist." *Id. at 958.*

In applying the foregoing legal principles to the instant matter, it is apparent that petitioner is entitled to an evidentiary hearing under the circumstances herein.

In turning to the facts of the instant matter, the State's case was primarily predicated on the testimony of a mentally ill witness, Frederick Stamps, who identified petitioner as the perpetrator of the murders over five (5) months after they occurred.  Mr. Stamps identified petitioner's picture from a six-person photographic lineup on June 6, 1994.  Furthermore, the

-7-

State was allowed to introduce two instances of other crimes evidence without objection by defense counsel.

However, it was not known to petitioner or his trial counsel until after the rendition of the verdict that three days before this photographic lineup, on June 3, 1994, Stamps' mother had him taken into protective custody because he was suffering from mental illness, showing violent behavior, and making threats against his family and others. The *Order for Protective Custody* signed by Orleans Parish Coroner Dr. Frank Mannered., which is attached hereto and made part hereon, is timed 5:05 p.m. of June 3, 1994. It is ironic that for a period over five months Mr. Stamps did not identify petitioner as the perpetrator of the murderer, yet during the period of time when he was suffering from mental illness, showing violent behavior and making threats against his family and others, Mr. Stamps suddenly identified petitioner as the murderer of the victims in this matter.

Petitioner avers that in light of the *Order for Protective Custody* the State is charged with knowledge of Mr. Stamps' mental condition time when he identified petitioner. The Parish Coroner signed the protective order and to a significant degree he is a part of the prosecutorial team. It is implausible, if not impossible, that the police and the prosecutors in this matter had no knowledge of Mr. Stamps' mental condition at the time. In light of the fact that for a period of over five months Mr. Stamps allegedly knew the identity of the murderer, yet failed to come forward with this information, the State had a duty to fully evaluate his credibility as a witness. In so doing, it had a duty to disclose to the defense all pertinent information relative to Mr. Stamps' background. Had the defense been armed with this pertinent information, it could have easily discredited Mr. Stamps and impeached him as a witness. Therefore, petitioner was denied due process when the he State failed to disclose that its primary witness was suffering from mental illness at the time he identified petitioner as the murderer. The defense in this matter was entitled to this favorable and material evidence, which destroys the credibility and reliability of the State's primary witness. Without this information, petitioner was deprived of a fair and impartial trial.

Moreover, petitioner's trial counsel, Attorney Robert Jenkins of the Orleans Indigent Defender Program, failed to thoroughly investigate the background of Mr. Stamps prior to trial and failed to emphasize the crucial contradictions of the State's two primary witnesses during

-8-

the course of trial.

Incredibly, he proffered a **HEARSAY** objection to *other crimes evidence* and failed to move for a mistrial when these incidents of other crimes evidence were introduced. His representation was deficient and prejudicial to petitioner and did not satisfy the standard governing effective assistance of counsel pronounced by the United States Supreme Court in *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).*

In light of the nature and substance of petitioner's claim, the court below erred when it failed to order an evidentiary hearing on his claims. Contrary to the conclusion of the court below, the issues raised on post-conviction were not considered on direct appeal. The case law of Louisiana is replete with law that ineffective assistance of counsel claims cannot be adjudicated upon direct appeal. If one can't take it up on direct appeal and can't get a hearing on post conviction, when and where does one get to actually raise this issue?

In regard to a Brady-Giglio claim, the Louisiana Supreme Court in *State ex rel. Medford v. Whitley, 666 So.2d 652 (La. 1996)*, discussed the requirement for a hearing under Article 930.8 and said:

> "If relator's claim based on facts not known meets the threshold tests
> set out in Article 928 and Article 929, the district court must hold a hearing
> . . . at which it will determine (1) whether relator has proved, or the state
> concedes, that his Brady claim rests on facts not disclosed to him or his
> attorney; and (2) if so, whether the state has been prejudiced in its "ability
> to respond to, negate, or rebut the allegations of the petition . . . by events
> not under the control of the state which have transpired since the date of
> [relator's] original conviction. . . ." In this context, the withholding of
> exculpatory evidence under certain circumstances may constitute an event
> 'under the control of the state' for purposes of La.Code Crim.Proc.
> art. 930.8 B."

In sum, since petitioner's application was timely filed, petitioner is entitled to an evidentiary hearing upon his claims. Accordingly, petitioner is entitled to post-conviction relief hearing.

## CONCLUSION

**WHEREFORE**, in light of the foregoing facts and argument, defendant prays that this Honorable Court issue an order remanding this matter to the trial court with instructions that an evidentiary hearing be held on the claims of ineffective assistance of counsel and suppression of favorable evidence by the prosecution.

STATE OF LOUISIANA                    )           SS AFFIDAVIT

PARISH OF ORLEANS                     (

     BEFORE ME the undersigned authority, personally came and appeared

C. GARY WAINWRIGHT, who after being duly sworn, deposed and said:

1.    That he is the attorney representing the defendant/appellant in the foregoing

     Writ Application.

2.    That he has read and signed the foregoing application and all the

     facts and allegations contained therein are true and correct to the

     best of his knowledge, information and belief, and

3.    That he has served a copy of said application and attachment thereto

     to the opposing counsel, the Fourth Circuit Court of Appeals  and to the Judge of

     the Trial Court.

                             C. Gary Wainwright

SWORN TO AND SUBSCRIBED

before me this _13ᵀʰ_ day of ___January_2003_.

s/

     Notary Public

11

8/29/98

Dear, Mr. Wainwright

Sir, this letter concern the request of a investigation to interview and take statements from my alibi witnesses in a form of a affidavits, this way it could be present with my post-conviction releaf writ.

This is my aunt phone number is 504-725-1077, her name is Ora lee Stevens she can give you the information to Mrs Delorse Varnado, daughter where about.

On the moring of this crime, I was with Mrs Delorse Varnado, daughter in Bogalusa, La. this is one reason why I need a investigator to seek these witness statements, so it be in the form of affidavits that would veirify that I was in Bogalusa on the night of this crime. My attorney didn't conduct no type of investigation, this would prove my claims in this matter in court. these witress are very important in my proving myself innocence of this crime. or please let me know your ideal in attacking my conviction. And I will wait for your answer to this letter.

I will like to thank you for your time.

Yeully Larry Moses #3956

**EXHIBIT "10"**

My family ask me to contact
you about the added cost for to
have your investigator services, so
please inform me of the cost for
this.

Larry Moses #
Magnolia - 2
La. State Prison
Angola, LA 70712

Mr. Gary C. Wainwright
Attorney at Law
2739 Tulane Ave.
New Orleans, LA 70119

October 27, 1999

RE:    Post-Conviction Proceedings

Dear Mr. Wainwright:

     In regards to the filing of my Post-Conviction application which you are assisting me
with, some time has passed by since I was denied relief in the Louisiana Supreme Court on
application for certiorari.
     According to the AEDPA **28 USC Sec. 2244(d)(1)** I only have one year to file my
federal habeas application **unless** the post conviction application is properly filed, *see e.g.,*
*Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 8/3/99); *Flanagan v. Johnson*, 154 F.3d
196, 201-02 (5th Cir. 1998). Only then is the time tolled for the purposes and intent of the
federal statute. If my post conviction application is not filed within a timely manner
(preferably in the next 30 - 60 days), I will lose all of my appeal court claims in the federal
court because one year will have lapsed. In that event I will only be able to bring my post-
conviction issues before the federal forum.
     I am asking you to at least file the post-conviction application form into the district
court, along with a notice that a brief in support will be forth coming. This will at least toll
the time period for filing my federal habeas corpus pleadings when or if that becomes
necessary in the future.
     I am thanking you in advance for your prompt attention to this very important matter,
and hope to hear back from you in the very near future, letting me know the status of my
state court post-conviction application, and whether or not you have filed the form in order
that the time will be tolled according to the federal statutes.

                                  Sincerely,

                                  Larry Moses

cc:    file

# EXHIBIT "11"

*G. Larry Moses*
*339562 Main complex – Mag. 4*
*Louisiana State Penitentiary*
*Angola, Louisiana 70712*

August 07, 2000

Mr. Gary Wainwright
2739 Tulane Avenue
New Orleans, LA 70119

Re: Case No. 371524

Mr. Wainwright:

   Good day. I'm writing your office in regard as to the status of my post conviction relief application that you filed on my behalf.

   The last time I heard from you, I mentioned to you of the learned discrepancies, and you advised me that you handled it, and sent me a copy of the filed documents (PCRA). This has been well over two and one half months ago, and since I have not had any rulings, updates, or the like.

   Considering the foregoing, I am formally requesting that you provide me with some form of update and/or information in this regard. Or alternatively, when can I be expecting a ruling? I understand that sometimes can be a waiting process, but I feel as though I'm doing nothing – whereas I could be doing something. Thereby, please inform me whether or not if there's anything that I could be doing while I await the Courts ruling.

# EXHIBIT "12"



Office of Mental Health

## ORDER FOR PROTECTIVE CUSTODY

To be completed by any parish coroner or district judge of a court of competent jurisdiction of the State of Louisiana when a pe officer or other credible person executes a statement under private signature specifying that, to the best of their knowledge and be a person is mentally ill or suffering from substance abuse and is in need of immediate treatment to protect the person or others physical harm.

Name and Address of Person Needing Treatment

Frederick Stamps

3306 Press

Race: *Black*

Sex: *Male*

Age: *33*

Name and Address of Nearest Relative, Friend or Guardian

Linda Stamps

3306 Press Street

Relationship: *Mothe*

Telephone No.: *949-5*

Description of acts or threats which have led to the belief that the person needing treatment is mentally ill or suffering from subst abuse and is in need of immediate hospitalization to protect himself/herself or others from physical harm.

*Frederick Stamps is suffering from mental illness, shows*
*violent behavior. Making threat against family and others*
*in need of exam.*

*Apt'd by Dr. to Bernste*

This order for Protective Custody shall constitute legal authority to transport

*Frederick Stamps* to *Medical Center of Louisiana*

(Name of Person to be Taken Into Custody)          (Treatment Facility or Coroner's Office)

for immediate examination by a physician to determine if he/she should be voluntarily admitted, admitted by emergency certific admitted as a non-contested admission or discharged.

*6-3-9* @ *5:05 pm*

Date and Time of Issuance

*Orleans*

Parish or Municipality Where Issued

SIGNED

_____
DISTRICT JUDGE

_____
PARISH CORONER

This order for custody shall be effective for seventy-two (72) hours from its issuance and shall be delivered to the coroner or dire of the treatment facility by the individual who has transported the person. The date and hour that the person is taken into custody shall be written on the order. Without delay, and in no event more than twelve hours after being taken into protec custody, the person shall be delivered to a treatment facility or the office of the coroner or he shall be released. The person in cus shall be examined within twenty-four (24) hours of his arrival at the treatment facility or coroner's office or he shall be relea

_____
Date & Time Person Taken Into Custody

_____
Signature, Officer Taking Person Into Custody

# EXHIBIT "13"